**UNION CITY BODY COMPANY, INC., Relator,**

**v.**

**Honorable Mario RAMIREZ, Respondent.**

**No. 04–95–00715–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 3, 1995.

Roy S. Dale, Martin E. Morris, Dale & Klein, L.L.P., McAllen, for appellant.

Romero Molina, Rio Grande, Robert L. Guerra, Thornton, Summers, Biechlin, Dunham & Brown, McAllen, for appellee.

## ON RELATOR'S PETITION FOR WRIT OF MANDAMUS

CHAPA, Chief Justice.

Relator, Union City Body Co., Inc. (Union City), brings this petition for writ of mandamus against respondent, the Honorable Mar-

io Ramirez, a visiting judge from the 229th Judicial District Court of Starr County, Texas. For the following reasons, we conclude the writ must be denied.

### Background

This case arises from an automobile accident which occurred in Starr County on June 12, 1990. Plaintiff Rance Bighorse was driving a van that had been manufactured by defendant/relator Union City Body Co. and owned by the United Parcel Service. The van was allegedly sideswiped by another vehicle and forced off of the road. Rance Bighorse suffered disabling injuries which left him paralyzed.

Bighorse and his wife, Linda, sued Union City, Movac, General Motors Corporation (GM), the Freedman Seating Co., Thompson Ramo Wordridge, a/k/a TRW, Inc. (TRW), and Starr County. Liberty Mutual Fire Insurance Company was the workers' compensation carrier for Bighorse's employer and filed a claim in the lawsuit as a plaintiff/intervenor. Union City filed cross- and third-party actions for contribution and indemnity against GM, Freedman, TRW, Movac, and Starr County.

On September 18, 1995, the case was called for trial and the plaintiffs announced ready. Counsel for Union City stated there were some pretrial motions that needed to be heard. Plaintiffs explained that their ninth amended petition asserted claims against only two of the original defendants—Movac and Union City.

Counsel for GM urged special exceptions to Union City's cross action. General Motors wanted to know specifically which component parts Union City alleged to be defective. Union City said it would amend its pleadings. The trial court offered Union City the opportunity to amend orally.[1]

General Motors also complained that Union City failed to incorporate the plaintiffs' allegations in its cross action and had produced no expert opinion regarding any defect in the part of the vehicle manufactured by GM. Union City responded that it expected the plaintiffs to produce evidence regarding the steering column, and that the plaintiffs' expert had previously stated that construction of the steering column was a cause of injury. Plaintiffs, however, said those claims had been nonsuited, and that the deposition testimony to which Union City alluded would be inadmissible.

Counsel for TRW then joined in GM's special exceptions, emphasizing that Union City sought only contribution and indemnity, which required attributing a percentage of causation to each one of the cross defendants. TRW noted that it sold both two-point and three-point belt systems. It argued that the plaintiffs sought damages based on Union City's choice of a two point belt system, not that the system was defective per se.

Freedman Seating Company reiterated GM's argument that Union City's cross claims failed to incorporate by reference any of the plaintiffs' allegations. Counsel for the Wise Company joined in this argument.

General Motors recapped the arguments, claiming again that Union City's cross actions failed to incorporate any of the plaintiffs' pleadings or make any claims of their own. The plaintiffs argued that discovery had revealed that defendants Movac and Union City were the culpable parties and that all claims against them belonged in the same suit.

The trial court then announced that it was granting all of the special exceptions and severing the cross claims: "This is the ruling of the court: special exceptions are all sustained. And I'm going to grant severance as to everybody except for Union Body and Movac. That's what we're going to try today." After the court clarified the style of the case to read *Bighorse v. Union Body and Movac*, counsel for Union City stated: "I understand that all special exceptions have been sustained so all cross claims are being severed at this time; it that my understand-

---

1. Union City responded to the trial court's invitation by referring to some allegations in the plaintiffs' ninth amended petition regarding the dash board and the interior compartment of the vehi-

cle. Our record does not show whether Union City orally amended its cross actions; moreover, if any amended pleadings were filed, they are not part of our record.

ing?" The court responded, "That's correct." When counsel for Union City added, "Against all cross defendants," the court responded, "We'll come back and try it again if we have to."

The court asked the remaining parties— the plaintiffs, Union City, Movac—to meet in chambers. Following an off-the-record discussion, the court held a hearing on a motion filed by Union City to disqualify one of the plaintiffs' experts. The court then recessed, to be reconvened at 9:00 a.m. the next morning.

Counsel for Union City arrived at 9:40 the next morning—September 19, 1995. Union City urged a motion to reconsider the severance order. The trial court denied the motion, reminding counsel the case had been set for 9 o'clock and that "Lot's of this stuff is waived, you know. Do you have anything else[?]"

Union City then applied to this court for a writ of mandamus and temporary emergency relief. On September 20, 1995, we issued a stay of all proceedings in the case pending our determination of the merits.

### Discussion

### *Introduction*

■ We can issue a writ of mandamus only if the record establishes there was (1) a clear abuse of discretion and (2) that there is no adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding); *El Centro del Barrio, Inc. v. Barlow,* 894 S.W.2d 775, 778 (Tex.App.—San Antonio 1994, orig. proceeding).

Rule 41 of the Texas Rules of Civil Procedure provides in part:

[A]ctions which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action that, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are

just. *Any claim against a party may be severed and proceeded with separately.*

TEX.R.CIV.P. 41 (emphasis added).

■ In *Guaranty Federal Savings Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990), the Texas Supreme Court emphasized that a trial court has broad discretion regarding the severance and consolidation of cases:

Rule 41 of the Texas Rule of Civil Procedure grants the trial court broad discretion in the matter of severance and consolidation of causes. The trial court's decision to grant a severance will not be reversed unless it has abused its discretion. A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. The controlling reasons for a severance are to do justice, avoid prejudice and further convenience.

*Id.* (citations omitted).

■ It is important to remember that our task in a mandamus proceeding is not to review the trial judge's decision *de novo,* but to determine whether he *clearly* abused his discretion in reaching his decision. "A trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker,* 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding)). "The relator must establish that the trial court could reasonably have reached only one decision." *Id.* at 840. *See also Johnson,* 700 S.W.2d at 917. It is not sufficient that the reviewing court would have reached a contrary decision unless the trial court's decision is shown to have been arbitrary and unreasonable. *Id.*

The question in this case is whether the trial court *clearly* abused its discretion when it ordered the cross claims severed from the underlying lawsuit and tried separately. For the following reasons, we conclude it did not.

### Waiver

■ Several of the real parties argue that Union City waived any complaint it may have had regarding the severance by waiting until the morning after the hearing to object, i.e., file the motion for reconsideration.

During oral argument, Union City responded that it was not served with a copy of the motion for severance, the plaintiffs' ninth amended petition, or the special exceptions, until the morning of the hearing; moreover, that the motion to sever was never set for a hearing. Counsel for Union City maintained that he came to court on the morning of September 18, 1995, prepared to argue a pretrial motion, only to find the plaintiffs were dismissing their claims against all but two of the defendants—Movac and Union City—and that the plaintiffs had filed a motion to sever the cross- and third-party claims from the underlying lawsuit.[2] Union City maintains that, given the circumstances, a timely objection was impossible.

Our record corroborates some of Union City's factual account, but the picture is still far from complete. For example, we have certified copies of the plaintiffs' ninth amended petition, the motion to sever, and the special exceptions filed by Freedman Seating Company and GM. All of these documents were file-marked on September 18, 1995.[3] The certificate of service on the ninth amended petition indicates that a copy was hand-delivered to Union City's lead counsel on September 18, 1995. The certificate of service on the motion to sever, however, is undated; there is no request for a setting. Moreover, the special exceptions filed by Freedman Seating Company and GM, which are handwritten, contain no certificate of service.

■ There is no question that the spirit, if not the letter, of the Texas Rules of Civil Procedure requires motions of any kind to be in writing and contain a certificate of counsel that a copy was either mailed or delivered to opposing counsel. *See* TEX. R.CIV.P. 21, 21a; *see also City of Houston v. Sam P. Wallace And Co.*, 585 S.W.2d 669, 673 (Tex.1979). Rule 21 provides in part:

> An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, shall be served upon the adverse party not less than three days before the time specified for the hearing, unless otherwise provided by these rules or shortened by the court.

TEX.R.CIV.P. 21. Rule 21a requires that any motion submitted to the court be delivered upon the opposing counsel either in person or by certified mail. TEX.R.CIV.P. 21a. Indeed, if a party does not serve or deliver to other parties copies of pleadings, motions, or other papers as required by Rules 21 and 21a, the court can impose sanctions. *See* TEX. R.CIV.P. 21b; *Johnson v. Smith*, 857 S.W.2d 612, 617 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding); *Ogunboyejo v. Prudential Property & Casualty Co.*, 844 S.W.2d 860, 862 (Tex.App.—Texarkana 1992, writ denied).

---

2. Our record also contains an affidavit from relator's counsel, which is cited by the dissent. The affidavit attests that neither of Union City's attorneys were "aware of, or had an opportunity to read, the Motion For Severance filed by Plaintiffs," prior to the court's ruling. The affidavit also states that one of the plaintiffs' attorneys refused to give relator's counsel a copy "of one of the Motions she alleged to have filed that morning, despite my demand that I be provided a copy." We note, however, that the relator's affidavit does not tell us whether counsel was refused a copy of the motion to sever, the ninth amended petition, the special exceptions, or some other document. Moreover, the assertion is controverted by an affidavit from the plaintiffs' counsel, which states that all of the motions filed by the plaintiffs were served on relator's counsel; that relator's counsel received not one but two copies of the motion for severance; and that plaintiffs "did not omit or refuse to give anyone, including [relator's counsel], copies of any Motions and in fact extra copies of the Motion For Severance were given to him." Finally, there is no indication that relator's counsel ever brought the problem to the attention of the trial judge, either during the pretrial hearings or in the motion to reconsider, prior to seeking leave to file a petition for mandamus.

3. The file-mark on the plaintiffs' ninth amended petition indicates that it was filed at 9:30 a.m. The motion to sever appears to have been filed at 9:45 a.m. Freedman Seating Company's special exceptions were filed at 11:40 a.m. Only a portion of the file-mark on GM's special exceptions is visible, so we cannot determine the time it was filed.

Nor is there any question that failing to serve motions or pleadings in the manner prescribed by rules 21 and 21a violates accepted and customary rules of practice, if not rules of procedure. *See, e.g., Texas Lawyer's Creed—A Mandate for Professionalism* III, 7 ("I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond."). We do not invite or encourage attorneys to surprise one another with an onslaught of last-minute motions, pleadings or briefs, perhaps aimed at some pretrial tactical advantage. To do so puts opposing counsel, not to mention the trial court, in a precarious position.

■ The question, however, is not just whether pleadings or motions were properly served on opposing counsel or whether those motions were set for a hearing, but whether Union City waived these and other errors by failing to promptly bring them to the attention of the trial court. Rule 52 of the rules of appellate procedure provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the trial court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

Tex.R.App.P. 52(a); *see also* Tex.R.Civ.Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."). Moreover, a complaint of inadequate notice under rules 21 or 21a is waived absent a timely and specific objection. *See Prade v. Helm,* 725 S.W.2d 525, 526 (Tex.App.—Dallas 1987, no writ); *Ex parte Fernandez,* 645 S.W.2d 636, 638 (Tex.App.—El Paso 1983, orig. proceeding). Even in a summary judgment context, an allegation that a party received less than the required notice under Rule 166a can be waived unless it is promptly brought to the attention of the trial court.

*See Jones v. Jones,* 888 S.W.2d 858, 859 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Negrini v. Beale,* 822 S.W.2d 822, 823 (Tex.App.—Houston [14th Dist.] 1992, no writ).

The only case to recently interpret the word "timely" in the context of Rule 52(a) is *Beall v. Ditmore,* 867 S.W.2d 791 (Tex. App.—El Paso 1993, writ denied), a case cited by the relator. The court noted, albeit in a different context:

While neither this court nor any other Texas Court has precisely defined the word "timely" in the Rule 52(a) context, it is clear from a simple reading of Texas law, that objections, in order to be considered timely, must be specific enough to enable the trial court to understand the precise nature of the error alleged and interposed at such a point in the proceedings so as to enable the trial court to understand the error alleged, if any. 'Timeliness' defies definition and generally the question of what is timely or otherwise must be left to the sound discretion of the trial judge, but such objection need not be immediate.

*Id.* at 795. (emphasis added).

■ Citing *Beall,* Union City argues that its objection need not have been immediate in order to preserve error. No doubt this is true, as a general proposition. The problem, however, is that immediacy is a concept that is almost as difficult to define as "timeliness," a word the *Beall* court noted "defies definition." *Id.* Nor does relator's brief offers us much guidance in this area. In the end, we are left with the *Beall* court's observation that what is timely must generally be left to the trial judge's sound discretion. *Id.*

Here, Union City's counsel was certainly under a duty to make a timely objection—if not to the severance itself, then at least to the fact that the motion appears to have been served on counsel that morning or that it was not set for a hearing. Union City, however, neither objected nor asked for a continuance. Although it made numerous attempts to respond to the non-suited defendants' special exceptions, Union City never once addressed the severance motion, nor did it raise the

issue of notice. Indeed, counsel's only reaction to the decision to sever the cross claims was to ask: "I understand that all special exceptions have been sustained so all cross claims are being severed at this time; it that my understanding?" There was, however, no objection. Following an off-the-record discussion in chambers, the court turned its attention to some evidentiary matters. Co-counsel later added, "Your Honor, let's go ahead and begin." Union City then participated in a lengthy evidentiary hearing to exclude the testimony of a plaintiffs' witness. Even then, however, there was no objection to the severance. Instead Union City waited until the following day, when jury selection was about to begin and the cross-claim defendants had long since vanished from the courtroom, to present a motion for reconsideration of the severance ruling.

▮ Like the *Beall* court, we recognize that every trial counsel is burdened by the dual objectives of presenting the case and yet preserving error for appeal. *Id.* at 867. This is never an easy task, especially in a case like the present one. Even so, we are also mindful of the fact that a party cannot lead a trial court into error and then complain about it later on appeal. *See, e.g., Kelly v. Cunningham,* 848 S.W.2d 370, 371 (Tex. App.—Houston [1st Dist.] 1993, no writ). For relator's counsel to sit through a lengthy pretrial hearing and say nothing about the order of severance until the following day, when jury selection was about to begin and the severed parties had long since been excused from the courtroom, is sufficiently dilatory for us to conclude that any error in granting the severance was waived. Given the circumstances of this case, we therefore hold that any error in severing the cross claims from the underlying litigation has been waived.

Union City, however, relies on our opinion in *Johnson v. State Farm Mutual Automobile Ins.,* 762 S.W.2d 267 (Tex.App.—San Antonio 1988, writ denied). In that case, the appellant claimed the trial court erred in ordering separate trials of her two causes of action—negligence and breach of the duty of good faith and fair dealing. We held that the error, if any, was waived:

> The record fails to reflect that an objection to the separate trials order was made by appellant. *It is clear that appellant presented no objection to the trial court at the time the order for separate trials was signed.* Further, at the time of the present trial on the issue of release, which occurred approximately one month later, the record shows affirmatively that appellant voiced no objection to the separate trial. *Therefore, nothing is preserved for review.*

*Id.* at 269. (emphasis added). Citing only the highlighted portion of our opinion, Union City claims that it preserved error by objecting before the order granting the separate trials was signed on September 19, 1995. Yet, our opinion in *Johnson* specifically noted that the appellant's motion to sever causes and have separate trials was heard more than a month before the jury trial, and that we had no record of the hearing. *Id.* at 268. Thus, we could not determine from the record before us when, or if, the appellant actually objected to the ruling for separate trials. *See id.* As we have already noted, the present case is quite different. For this reason alone, Union City's reliance on *Johnson* is therefore misplaced.[4]

Given the record in this case, we simply cannot say the trial court clearly abused its discretion. This is not to say we would have reached the same conclusion as the trial court, or that we encourage attorneys to

---

4. Nor is the present case in any way similar to *Mann v. Ramirez & Tex. Dyno Chem, Inc.,* 905 S.W.2d 275 (Tex.App.—San Antonio 1995, writ pending), which is cited by the dissent. *Mann* involved a situation where there had been irregularities in the granting and documentation of juror exemptions and excuses. It was undisputed that a close personal relationship existed between the District Clerk and an official representative of the defendant company. Our opinion specifically noted that the appellants' attorney made an inquiry at the bench regarding the small number of jurors who were summoned for voir dire. He was assured by a representative of the District Clerk's office—in the presence of the trial judge and the attorney for the appellees— that all regulations had been followed. Given the circumstances, we concluded that a motion for mistrial filed after the verdict was returned but before *entry of judgment* preserved error, since appellants acted as soon as they "knew or should have known" of the irregularities.

surprise one another on the morning of trial with a flurry of eleventh-hour motions or pleadings. Whether or not we would have decided the issue differently, however, mandamus requires the relator to establish that the trial court could have reached only *one* decision. *Walker*, 827 S.W.2d at 840. In the present case, the record simply does not provide such clarity. We cannot disturb the trial court's decision unless it shown to have been so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* This the relator has failed to do.

It is unnecessary for us to address whether the relator has a clear and adequate remedy at law, the remaining component of mandamus review. We hold that, given the circumstances of this case, any error in severing the cross claims from the underlying litigation has been waived. Consequently, relator has not shown there was a clear abuse of discretion. For this reason, the writ is denied.

RICKHOFF, Justice, concurring.

Justice John F. Onion, Jr., the former Presiding Judge of the Texas Court of Criminal Appeals, once observed "that appellate judges watch from on high the legal battle fought below, and when the dust and smoke of the battle clears they come down out of the hills and shoot the wounded." *Black v. State*, 723 S.W.2d 674, 677 n. 1 (Tex.Crim. App.1986) (Onion, J., dissenting). The difference here is that the outcome of the battle is still far from clear.

We know that the plaintiffs adjusted their pleadings and asked for a severance on the morning of trial. We know that the special exceptions to Union City's cross claims, which were handwritten, were also filed on the morning of trial. While the record is far from clear on this point, the circumstances suggest these eleventh-hour filings may not have resulted from mere carelessness, and in fact may have had more sinister motive. However, we also know that Union City— apparently focused on the original purpose of the hearing—failed to object to the severance until the next morning, when jurors had been in the hall for forty minutes and all the severed parties were long gone from Starr County.

To complicate matters, during oral argument it became clear none of the litigants knew with any degree of certainty whether, or how, Union City could effectively pursue its cross claims if the severance were allowed to stand. The dissent argues, not without some justification, that Texas has long required contribution claims to be tried together with the underlying suit, and that there are very practical reasons for doing so. Indeed, even a casual reading of the legislative history behind the 1987 tort reform legislation leaves little room for doubt that § 33.016(b) of the civil practice and remedies code maintains a defendant's right—previously found in former article 2212a and the now-repealed § 33.017—to litigate contribution claims in the primary suit. *See* John T. Montford and Will G. Barber, *1987 Texas Tort Reform: The Quest For A Fairer and More Predictable Texas Civil Justice System*, 25 HOUS.L.REV. 245, 296–97 (1988) (discussing hypothetical situation that is strikingly similar to the present case).

But while I may agree with the dissent that the trial court's decision to sever Union City's cross- and third-party claims may have unfortunate consequences for any trial of the severed claims, much less a subsequent appeal, I also recognize that Union City waived the error by not making a timely objection. Because I agree this prevents us from reaching the merits, I concur in the majority's denial of the writ of mandamus. Even so, in the interest of justice and fairness, I hasten to add that the trial court could avoid the problems foreseen by the dissent if it would simply rescind the order of severance and try all of the liability issues together.

DUNCAN, Justice, dissenting.

With its waiver holding in this case, this court rigidly interprets Rule 52(a), TEX. R.APP.P., in a manner that totally disregards the circumstances of this case—including Union City's substantial rights and its adversary's blatant violation of his duty to "not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond." TEXAS LAWYER'S CREED

III(7). In so doing, the majority firmly places its stamp of approval and indeed encourages conduct expressly prohibited by the Texas Lawyer's Creed and promulgates a policy—both ethical and procedural—I cannot and will not endorse. I therefore dissent.

## FACTS

On June 12, 1990, Rance Bighorse was driving his UPS cargo van along his delivery route when, he alleges, he was sideswiped and forced off the road by a truck being driven by an employee of Movac Service Company. As a result of the accident, Bighorse was rendered a quadriplegic.

In his subsequent lawsuit, Bighorse, joined by his wife, sued Movac for negligence and Starr County for a "special defect" pursuant to section 101.024 of the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. Finally, the Bighorses also sued General Motors Corporation, Union City, TRW, and Freedman for negligence and strict products liability. The Bighorses alleged that these defendants were liable in the following respects:

- GM—negligence and strict products liability for design, manufacture, and distribution of a defective product (occupant protection system, seating assembly, interior occupant compartment, and steering wheel and steering gear assembly) and failure to warn
- Union City—negligence and strict products liability for design, manufacture, and distribution of defective product (occupant protection system, seating assembly, interior occupant compartment, and steering wheel and steering gear assembly) and failure to warn
- TRW—design, manufacture, and distribution of a defective and dangerous occupant protection system
- Freedman—design, manufacture, and distribution of a defective seating arrangement

When discovery revealed some uncertainty as to whether Freedman or Wise Company had manufactured the seat, Union City filed a third-party action against Wise alleging that, if TRW did not manufacture the seat,

Wise did and its design, manufacturing, and marketing of the seat was defective; accordingly, Wise was liable to Union City for contribution or indemnity. Subsequently, Union City also filed cross-claims against its co-defendants for contribution or indemnity. Union City alleged that GM and Freedman were liable to it for contribution or indemnity because they had manufactured, assembled, or provided subassemblies that the Bighorses claimed were defective. Finally, Union City alleged that TRW and Starr County were liable to it for contribution or indemnity because of the "various wrongful acts" alleged by the Bighorses.

The case was set for a jury trial on Monday, September 18, 1995, before the Honorable Mario Ramirez, a visiting judge in the 229th Judicial District Court in Starr County. Exactly one week prior to trial, on September 11, the Bighorses filed their Eighth Amended Original Petition. This petition nonsuited TRW and Freedman.

On the morning of trial, at 9:30 a.m., the Bighorses filed their Ninth Amended Original Petition. In this petition, the Bighorses nonsuited GM and Starr County, leaving as defendants only Movac and Union City. At 10:20 and 11:40 a.m., respectively, GM and Freedman filed handwritten special exceptions to Union City's cross-actions, complaining that each "wholly failed to state any cause of action" and asking that each "be stricken in [its] entirety." The basis for these special exceptions was that, because the Bighorses' most recent petition omitted all allegations against GM and Freedman, the allegations in Union City's cross-actions were insufficiently specific.

Judge Ramirez first heard GM and Freedman's special exceptions. At the conclusion of GM's argument, Judge Ramirez asked whether Union City had a response. Union City represented that it would amend its pleadings. When Judge Ramirez gave Union City an opportunity to orally amend, Union City indicated that it would amend in accordance with page references to and a summary of the Bighorses' allegations in their superseded Eighth Amended Original Petition. At the conclusion of the argument on the special exceptions, Judge Ramirez ruled:

"This is the ruling of the Court: special exceptions are all sustained. And I'm going to grant severance as to everybody except for Union Body [sic] and Movac. That's what we're going to try today."

At the Bighorses' request, the court then restyled the case *Bighorse v. Union Body and Movac*. Then the following interchange occurred:

Counsel for Union City: I understand all special exceptions have been sustained so all cross actions are being severed at this time; is that my understanding?

Judge Ramirez: That's correct.

Counsel for Union City: Against all cross defendants.

Judge Ramirez: We'll come back and try it again if we have to.

Counsel for Union City: Your Honor, we do have some other motions, including that one, and one of them would be to take up special exceptions to the—the plaintiff's ninth amended petition.

Judge Ramirez: Okay, let me see the attorneys that are left in the case in chambers briefly so we can get our time straightened up.

(An off-the-record discussion is held in chambers with the court).

Judge Ramirez: All right, are there some evidentiary matters that we need to take up.

Counsel for Union City: Yes, Your Honor.

Judge Ramirez: Mr. Morris, you're going to be handling this?

Counsel for Union City: I suppose so. I don't know where Mr. Dale is.

Counsel for the Bighorses: He is in Erasmo Saenz' office, Your Honor. He was making a call. I just left him about five minutes ago.

Judge Ramirez: Okay, Mr. Morris, I can delay or you can go ahead.

Counsel for Union City: Could we wait just a minute, Your Honor?

Judge Ramirez: Sure. Why don't you go see if he's available?

Counsel for the Bighorses: Judge, could we note on the record that we did file that ninth amended petition?

Judge Ramirez: Yes, sir.

Counsel for Union City: Your Honor, let's go ahead and begin.

Judge Ramirez then proceeded to the evidentiary hearing on Union City's motion to exclude the testimony of the Bighorses' expert. After extensive testimony and argument, Judge Ramirez denied the motion to exclude and then heard the parties' motions in limine and Union City's motion for a continuance to allow Union City more time to get relevant documents from UPS. When these pretrial hearings concluded, at approximately 5:00 p.m., Judge Ramirez instructed counsel to return at 9:00 a.m. the following morning.

The certified copy of the Bighorses' motion to sever filed with this court indicates the motion was filed at 9:45 a.m. on September 18. The record does not establish when this motion was served on counsel for Union City; however, unlike the Bighorses' amended petition, which reflects service on September 18, the certificate of service on the motion to sever is undated. According to the affidavit of one of Union City's attorneys, neither of Union City's attorneys was aware of or had an opportunity to read the motion to sever prior to the court's ruling. Indeed, Union City's attorney's affidavit states that he did not have an opportunity to read the Bighorses' motion to sever until after the court recessed on September 18. No controverting affidavit or verified assertion disputes Union City's attorney's affidavit in these respects.

The following day, at 9:25 a.m., counsel for Union City filed a motion to reconsider the severance ruling. In this motion, Union City argued that the severance was improper because the facts and issues involved in the Bighorses' remaining claims and Union City's cross- and third-party claims were inextricably intertwined; the claims, cross-claims, and third-party claims would involve presentation of the same proof; and severance would force Union City to "needlessly relitigate the liability issues and also the extent of the future medical damages, equipment needs, and economic losses of [the Bighorses]." Union City also argued that it would be

severely prejudiced by a severance because "[i]t will be impossible for [Union City] to present evidence on damages and liability to two different juries in order for them to make a proper determination in both cases" and because "a severance in this case will cause prejudice to the Defendants' right to have the liability of all the defendants and third party defendants determined in one proceeding," citing *Ryland Group Inc. v. White*, 723 S.W.2d 160, 163 (Tex.App.— Houston [1st Dist.] 1986, orig. proceeding). Finally, Union City asserted that "it is inconceivable that the responsibility, if any, of the Defendants against whom [Union City] has asserted cross-actions could be fairly determined by a subsequent jury after a determination by a jury in the original suit. The very size and complexity of this case, with its numerous issues, witnesses, and experts renders a subsequent trial of these companies' contribution responsibility to [Union City] a practical impossibility."

Union's City's motion to reconsider was presented to Judge Ramirez at 9:40 a.m. Without hearing argument, Judge Ramirez orally denied the motion to reconsider, as well as a motion for a continuance pending mandamus. At 9:50 a.m. Judge Ramirez signed the order granting the severance, as well as the orders denying Union City's motion to reconsider and motion for continuance. Judge Ramirez then opined that "[l]ots of this stuff is waived, you know" and proceeded to voir dire.

Later in the day on September 19, Union City filed its motion for leave and petition for writ of mandamus in this court. In connection with its petition, Union City asked this court to stay the proceedings in the underlying suit. The following day this court granted leave to file and issued a stay.

### STANDARD OF REVIEW

"Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)).

To establish an abuse of discretion, the complaining party must demonstrate that the trial court acted unreasonably, arbitrarily, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In the context of factual matters, the record must establish that the trial court could reasonably have reached only one conclusion, and it reached a contrary conclusion. *Walker*, 827 S.W.2d at 839–40. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.* at 840.

To establish that appeal is not an adequate remedy, the complaining party must do more than show that an appeal "may involve more expense or delay than obtaining an extraordinary writ." *Id.* at 842. "Interference is justified only when parties stand to lose their substantial rights." *Id.* (quoting *Iley v. Hughes*, 158 Tex. 362, 368, 311 S.W.2d 648, 652 (1958)).

### THE EFFECT OF THE SEVERANCE

During oral argument in this court, Union City's attorney agreed that the effect of the severance was not immediately apparent to him. In this respect, I believe Union City's counsel is likely in the same position as many in the Texas bench and bar. Accordingly, the potential effect of the severance must first be discussed; only then can the resulting prejudice to Union City be fully appreciated and the requirements for a writ of mandamus thoughtfully reviewed.

The law of contribution and indemnity in Texas legal history has been convoluted to say the least. *See, e.g., First Title Co. of Waco v. Garrett*, 860 S.W.2d 74 (Tex.1993); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex.1991); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984). By 1993, the Texas Supreme Court noted that "Texas has four different contribution schemes; the appropriate scheme is determined by referring to the theories of liability

by which a tortfeasor has been found culpable." *Garrett,* 860 S.W.2d at 78 n. 5 & accompanying text; *see* TEX.CIV.PRAC. & REM. CODE ANN. §§ 32.001–.003 (Vernon 1986) (original contribution scheme providing for pro rata contribution among joint tortfeasors); TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001–.017 (Vernon 1986) (Comparative Negligence Act), *amended and repealed by,* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2.04–2.11B, § 33.001–33.017, 1987 Tex.Gen. Laws 40–44; TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001–.017 (Vernon Supp.1995) (Comparative Responsibility Act); *Duncan,* 665 S.W.2d at 428–29 (common law pure comparative causation).

Because this case was filed after September 2, 1987 and involves allegations of negligence and strict products liability, the applicable contribution scheme is that set forth in Texas's Comparative Responsibility Act. *Garrett,* 860 S.W.2d at 78 n. 5. Under the Act, "[t]he trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility with respect to (1) each claimant; (2) each defendant; and (3) each settling person." TEX.CIV.PRAC. & REM.CODE ANN. § 33.003 (Vernon Supp.1995). "Percentage of responsibility" is defined as "that percentage attributed by the trier of fact to each claimant, each defendant, or each settling person with respect to causing or contributing to cause in any way, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity violative of the applicable legal standard, or by any combination of the foregoing, the personal injury, property damage, death, or other harm for which recovery of damages is sought." *Id.* at § 33.011(4).

Under the Act, the court's charge submits a question to the trier of fact to determine the comparative responsibility of all plaintiffs and all defendants, settling and non-settling. John T. Montford & Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 HOUS.L.REV. 245, 266–70 (Mar. 1988) [hereinafter *Montford & Barber* ]. This comparative responsibility finding determines (1) whether recovery is barred because of the claimant's percentage of responsibility; (2) the percentage by which a claimant's damages will be reduced, if any; (3) the extent of each defendant's liability; and (4) whether a defendant is jointly and severally liable. TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001(b), 33.012(a), 33.013 (Vernon Supp.1995). In the event of a monetary settlement, the Act further provides credit or offset procedures. *Id.* at §§ 33.012(b)-(c), 33.014.

In addition to a system of comparative responsibility between plaintiffs and defendants, the Act also provides a scheme for resolving contribution rights among non-settling defendants, cross-defendants, and third-party defendants. *Id.* at §§ 33.015–.016. Accordingly, "[t]he trier of fact shall determine as a separate issue or finding of fact the percentage of responsibility with respect to each contribution defendant...." *Id.* at § 33.016(c). Unlike the percentages of responsibility attributed to defendants, however, percentages of responsibility attributed to non-settling cross-defendants and third-party defendants do not affect the plaintiff's recovery or joint and several liability. *See id.* at §§ 33.012, 33.013, 33.016(c).

Under the old contributory negligence statute, all claims for contribution between named defendants "must" be determined in the main suit. TEX.CIV.PRAC. & REM.CODE ANN. § 33.017 (Vernon 1986), *repealed* by, Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, § 2.11B, 1987 Tex.Gen.Laws 44. The primary purpose of this provision was "to avoid separate trials of the plaintiff's claims and contribution claims against several defendants." *Arthur Bros., Inc. v. U.M.C., Inc.,* 647 S.W.2d 244, 246 (Tex.1982). Although amended section 33.016(b) uses the word "may," rather than "must," Senator Montford and Mr. Barber indicate that contribution claims are still to be determined in the primary suit. *See Montford & Barber* at 296–97.

In my view, while section 33.016(b) may be couched in discretionary terms, contribution rights must still generally be determined in the primary suit for one of two reasons. First, a judgment in the primary suit may bar the subsequent contribution suit. *See Getty Oil v. Insurance Co. of N. Am.,* 845

S.W.2d 794, 800 (Tex.1992), *cert. denied,* ——— U.S. ———, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993) (when defendant/cross-plaintiff unsuccessfully asserted some but not all of its cross-claims in primary suit, subsequent suit against cross-defendant for claims arising out of same transaction barred by res judicata); *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992) (adopting transactional approach to res judicata so that subsequent suit barred if it arises out of same subject matter and, with diligence, could have been tried in prior suit); *Morris v. Landoll Corp.,* 856 S.W.2d 265 (Tex.App.—Fort Worth 1993, writ denied) (cross-claims arising out of same subject matter but not asserted in primary suit barred by res judicata).

Alternatively, if for some reason the contribution suit is not barred by res judicata in these unusual circumstances, then, at the very least, determining contribution rights in a separate trial subjects the cross-plaintiff or third-party plaintiff to the very real risk of inconsistent comparative responsibility and damage findings. This would appear to be necessarily true as a matter of traditional res judicata law: as a party to the first judgment, the cross-plaintiff is bound by it, while the cross-defendants, which were neither parties nor privies, are not bound. *See, e.g., Getty Oil Co.,* 845 S.W.2d at 800–801.

For instance, assume the jury in the main suit determines that the Plaintiff, Products Defendants 1 and 2, and Negligence Defendant 3 are equally responsible for the Plaintiff's injuries, *i.e.,* each 25% responsible. The jury in the main suit further determines that the Plaintiff's damages (net of his percentage of responsibility) are $10 million. Each defendant is then jointly and severally liable to the plaintiff for $10 million, and each is individually liable for $3½ million. However, in the subsequent trial of Products Defendant 1's cross-claims against Cross–Defendants 4, 5, 6, and 7 (none of whom were parties to the first judgment or in privity with a party), the jury determines that the Plaintiff was 50% responsible, and the Cross–Plaintiff and each

cross-defendant only 10% responsible. The second jury also finds that the Plaintiff's damages were not $10 million but $1 million (net of the Plaintiff's percentage of responsibility). In that scenario, it would appear that Products Defendant 1 is still jointly and severally liable to the Plaintiff for $10 million and individually liable to the Plaintiff for $3½ million but Products Defendant 1 can at most recover 10% of $1 million or $100,000 each from Cross–Defendants 4, 5, 6, and 7. The possible permutations are mind-boggling.[1]

### ABUSE OF DISCRETION AND INADEQUACY OF REMEDY BY APPEAL

As a result of the severance, Union City faces either a total loss of its contribution claims through res judicata or the loss of its substantial right to a determination of the Bighorses' damages and the percentages of responsibility for all plaintiffs, defendants, cross-defendants, and third-party defendants—based upon the same evidence in the same suit by the same jury and with the same trial court rulings. *See Ryland Group Inc. v. White,* 723 S.W.2d 160 (Tex.App.— Houston [1st Dist.] 1986, orig. proceeding). In my view, to establish the potential effect of a severance in this multi-party, mixed theory case governed by the Comparative Responsibility Act is to conclusively establish that the severance constitutes an abuse of discretion not remediable by appeal. What has been done via a severance in this case simply cannot be undone on appeal in either suit. The prejudice to Union City as a result of the severance is insurmountable other than through an extraordinary writ.

I would hold that the severance order in this case constitutes an abuse of discretion not remediable by appeal. The majority, however, only superficially analyzes the abuse of discretion issue and entirely avoids the adequacy of Union City's appellate remedy because it places its primary reliance on its waiver holding. With this holding—and

---

1. Concerned about this possibility, I asked counsel for the cross-defendants for their views on this issue during oral argument. Counsel for Freedman agreed, stating that in his view the cross-defendants will not be bound by a judgment in the Bighorses' suit against Union City and Movac; therefore, they can relitigate not only comparative fault but also the Bighorses' damages in the subsequent contribution trial.

the policy it establishes—I vehemently disagree.

## PRESERVATION OF ERROR

Rule 52(a), TEX.R.APP.P., provides the general rule for preservation:

> In order to preserve a complaint for appellate review, a party must have presented to the trial court a *timely* request, objection, or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

TEX.R.APP.P. 52(a) (emphasis added). In this case, it is undisputed that Union City objected to the trial court's severance ruling by filing its motion to reconsider, which specifically laid out why the severance was improper and how the severance would prejudice Union City. It is further undisputed that Union City obtained a ruling on its motion. The issue before this court, therefore, is not whether Union City specifically objected but whether its objection was timely.

Plainly, a "timely" objection is not always an immediate objection. *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied). Rather, whether an objection is "timely" is context-sensitive; it depends upon the nature of the error asserted, as well as the surrounding circumstances. As explained by then-Justice and now Chief Justice Barajas in *Beall,* " '[t]imeliness' defies definition," but "it is clear from a simple reading of Texas law, that objections, in order to be considered timely, must be ... interposed at such a point in the proceedings so as to enable the trial court the opportunity to cure the error alleged, if any." *Beall,* 867 S.W.2d at 795. In conducting this analysis, however, "[a]ppellate courts need not be wholly insensitive to the conflicting needs of the attorney who, in the midst of a complex jury trial, is charged with both the preservation of error and the presentation of the best case possible." *Id.* Thus in *Beall* the court held that, given the circumstances, an objection and motion for mistrial arising out of a witness's reference to insurance, "while not

immediate, was timely" when made soon after the error occurred. *Id.* at 796; *see also Mann v. Ramirez & Tex. Dyno Chem, Inc.,* 905 S.W.2d 275 (Tex.App.—San Antonio, writ pending) (objection to jury array timely even though not raised until motion for new trial).

I agree that, in the usual case—when three-days notice is given pursuant to Rule 21, TEX.R.CIV.P. and a hearing is held—a party preserves the error in granting a severance by opposing the motion during the hearing. This is not, however, a usual case. In this case, Union City arrived at the courthouse on the morning of trial expecting to present its motion to exclude the testimony of the Bighorses' expert, argue routine motions in limine, pick a jury, and then proceed to try the issues that had been framed by the pleadings on file the previous week. Instead, Union City faced a rash of pleadings that attempted to fundamentally alter the structure of the trial—an amended petition that nonsuited GM and Starr County, special exceptions that sought to strike Union City's cross-claims, and a motion to sever Union City's cross- and third-party claims from the Bighorses' remaining claims. Attempting to deal with the situation, Union City responded to the special exceptions. Not surprisingly, therefore, even if Union City had been served with the motion to sever, it was not aware of it and had no opportunity to read it before the trial judge—without hearing any argument—granted the motion.

Nor is this case unusual just because there was a lack of adequate notice. A lack of notice might make no difference if all that had been filed were routine motions in limine or non-suits of the cross-defendants. What further differentiates this case from the norm are the complex ramifications of the motion to sever—ramifications that are just not apparent absent serious thought and extensive research—and the fact that, at the same time Union City's counsel needed to study the effect of a severance, it was required to go forward with hearings on other pretrial matters. Under these circumstances, I simply cannot in good conscience join the majority in holding that Union City's motion to reconsider, filed twenty-four hours

after the severance ruling and before jury selection began, was untimely.

I am further compelled to dissent from the majority's waiver holding because it represents this court's acquiescence in violations of every Texas lawyer's obligation to "not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond." TEXAS LAWYER'S CREED III(7). To hold, as the majority does, that a violation of this duty is of no import unless the opposing attorney immediately objects is to render the Creed meaningless; it adds nothing to the Rules of Civil and Appellate Procedure. That is not consistent with my understanding that the Creed has significance as a standard of conduct that supplements the rules and fills the gap between the procedurally permissible and the professionally acceptable. Nor is it consistent with my understanding that it is this court's responsibility to enforce the Creed through the court's "inherent powers and rules already in existence" "when necessary." Eugene A. Cook, *The Search for Professionalism,* Tex.B.J. 1302 (Dec.1989) (quoting TEXAS LAWYER'S CREED Order of Adoption ¶ 4). "As a realistic matter, no effort to improve the conduct of the legal profession is going to succeed without the help—ideally, the enthusiastic help—of the judges." SOL M. LINOWITZ & MARTIN MAYER, THE BETRAYED PROFESSION 167–68 (1994).

I would hold that, if Union City waived its objection to the severance, the Bighorses' attorney's violation of the Creed by serving the motion to sever in a manner that unfairly limited Union City's ability and opportunity to respond, acquiesced in by the other real parties in interest, estops each and all of them from claiming that Union City waived its objection by failing to assert it until the following morning. *See Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex.1987) (estoppel is fact-based inquiry, designed to prevent injustice, that "may be invoked against a party only when he has failed to do that which he has a duty to do").

### CONCLUSION

In sum, I would hold that the error was preserved, either because Union City's objection was timely or because the real parties in interest are estopped from claiming waiver, and that the error constitutes an abuse of discretion not remediable by appeal. I would therefore conditionally issue a writ of mandamus directing Judge Ramirez to declare a mistrial as to the primary claims, vacate his order of severance, and proceed to trial of the reconsolidated case at his discretion.

Whether this is how litigation is to be fought—and won—in the Texas courts, and whether the majority opinion accords the Texas Lawyer's Creed due weight, seem to me to be questions of overarching importance to the jurisprudence of this State. Accordingly, for the guidance of us all, I urge Union City to seek temporary relief and further review of this matter in the Texas Supreme Court. *See* TEX.R.APP.P. 121(a)(1), (d).