NUMBER 13-98-124-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ____________________________________________________________________ 



JOSE BERNARDO NIETO, Appellant, 



v.

 

FGB REALTY ADVISORS, INC., Appellee. 

____________________________________________________________________ 


On appeal from the 103rd District Court 

of Cameron County, Texas. 


____________________________________________________________________ 



O P I N I O N

 

Before Justice Dorsey, Yañez, and Chavez

 Opinion by Justice Yañez

 This case arises from an attempt by a trial court to untangle a series of transactions, further confused by the failure of a
savings and loan. The trial court granted title to the property in dispute to appellee, Wilshire Funding Corporation
(Wilshire), with appellant, Jose Nieto, retaining possession of the property, conditioned on his executing a promissory note
and paying Wilshire for the property. Jose Nieto challenges the trial court's decision in five points of error. We affirm. 

 Nieto signed a contract to purchase a house and lot (the property) from Paragon Builders, Inc. (Paragon), on December 6,
1985. The contract provided that if it was assigned to First Federal Savings and Loan Association of Laredo (the Savings
and Loan), then Nieto would make payments directly to the Savings and Loan. Paragon used the sales contract as collateral
to secure a commercial loan from the Savings and Loan on December 11, 1985, assigning the Nieto contract to the Savings
and Loan. The loan agreement, although it assigned Nieto's payments to the Savings and Loan, did not transfer the title,
which apparently remained with Paragon. Several years later, the Savings and Loan was declared insolvent, and the
Resolution Trust Corporation was appointed receiver of the Savings and Loan's assets. The Resolution Trust Corporation
subsequently sold the assets to FGB Realty Advisors, Inc. (FGB). FGB thus became the assignees of the sales contract
between Paragon and Nieto. Paragon executed a quitclaim deed to Nieto on February 14, 1995, transferring to Nieto any
interest Paragon retained in the property. On August 6, 1996, FGB filed suit against Paragon and Nieto to settle the
question of who held title to the property. FGB assigned its interest in the contract and any interest it held in the property to
Wilshire on February 24, 1997. 

 On January 22, 1998, Wilshire, as assignee of the original plaintiff, FGB, amended the original petition to substitute
Wilshire for FGB as plaintiff, and request that the court exercise its equitable powers to set aside Paragon's quitclaim to
Nieto, and award title to Wilshire. Following a bench trial, the court granted Wilshire title to the property, but allowed
Nieto to retain possession "conditioned upon his execution and payment of a Promissory Note in the principal sum of
$43,000.00, payable over fifteen (15) years with 8.5% interest." 

 Nieto's first point of error is that the trial court erred in awarding title to Wilshire because "there was no evidence
presented at trial that [Wilshire] had either legal or equitable title to said real estate or that [Wilshire] had any equitable
right to such a remedy." Nieto's second point of error is the same as the first, except that it argues that there was
insufficient evidence. The trial court did not base its judgment on a finding that Wilshire had either equitable or legal title,
instead granting title to Wilshire under the court's equitable power. Therefore, we will address only the question of whether
there was evidence to support the trial court awarding title to Wilshire under the court's equitable powers. 

 In a case tried to the court, the findings of fact "have the same force and dignity as a jury's verdict upon the questions." 
Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). The standards for reviewing the legal and factual
sufficiency of the evidence supporting the court's findings of fact are the same as the standards applied in reviewing the
legal and factual sufficiency of the evidence supporting a jury's finding. Id. 



 A challenge to the legal sufficiency of the evidence will succeed when: 

(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. 



Merrell Dow Pharmaceuticals v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 53 U.S. 1119 (1998). A
challenge to the factual sufficiency of the evidence will succeed "only if [the verdict] is so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust." Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
407 (Tex. 1998). "The court of appeals is not a fact finder. Accordingly, the court of appeals may not pass upon the
witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different
result." Id. 

 At the trial, Juan Martinez, the president of Paragon, testified that he executed a quitclaim deed to Nieto in the hope of
avoiding litigation. He stated that Nieto had threatened to file suit against Paragon over the question of title. According to
Martinez, his idea was to avoid the dispute, and Nieto could deal with any problems involving the property. Martinez
testified that he did not know who held title to the property, and that his sole reason for signing the quitclaim was to avoid
Nieto's threatened lawsuit. 

 Paragon's attorney, Louis LaVaude, also testified. On direct examination, and again on redirect, LaVaude stated that
Paragon did not know if any money was owed, or to whom it might be owed, but it was understood that one of the
"problems" to be addressed by Nieto after receiving the quitclaim would be to deal with any existing debts. LaVaude also
testified that, due to the fact that the contract for sale and title to the property were not owned by the same entities, there
would be a problem in finalizing the sale under the contract. LaVaude aptly described the situation as "a nightmare." 

 Richard Daugherty, a contested litigation manager for Wilshire, testified that Nieto had failed to pay over $40,000 on the
contract Nieto originally signed with Paragon. Daugherty explained that Paragon had pledged the contract to the Savings
and Loan as collateral on a loan from the Savings and Loan. Under this assignment, the Savings and Loan obtained the
right to the payments that Nieto was contractually obligated to make for the property; however, the Savings and Loan did
not gain title to the property. Daugherty testified that there was some indication in the records from the Savings and Loan
that Nieto made some payments directly to the Savings and Loan. According to Daugherty, following the collapse of the
Savings and Loan, the collateral assignment eventually came to be the property of FGB Realty Advisors, Inc., who, in turn,
sold the contract at a foreclosure sale to Wilshire, thus putting Wilshire under the same obligations and rights as Paragon
when the contract with Nieto was first executed. Daugherty testified that Wilshire, by taking over Paragon's position,
would be required to issue title to Nieto, if Nieto actually paid for the property. Wilshire, however, lacked title to the
property. Daugherty admitted that Wilshire did not have title to the land and had amended their petition to gain title to the
property. 

 Another witness, Stephen Best, a real estate attorney, testified that he had, at FGB's request, prepared a quitclaim deed
between FGB and Nieto, which was admitted as evidence by Nieto. The quitclaim, according to Best, was produced to
correct a faulty reference to a record volume and page number contained in the notice of a foreclosure sale.(1)Best explained
that the foreclosure sale was on the deed of trust from the previous owners of the property. He further testified that the
quitclaim did not release Nieto from paying under the contract for sale. Best recounted a statement by Nieto's attorney that
his clients were going to get the property for free "because you guys don't own it." There were no objections to this
testimony, although it was hearsay, therefore it could be considered by the court in making its ruling. Tex. R. Evid. 802;
Texas Commerce Bank, Nat'l Ass'n v. New, 3 S.W.2d 515, 517 (Tex. 1999). Best testified, again without objection, that
Nieto's attorney informed him that the Nietos were under no obligation to make payments on the property. Best stated that
he had made a demand on Nieto that he pay the balance owed on the contract, Nieto did not respond, and the contract was
then terminated. 

 The court admitted several documents in evidence. Wilshire's exhibits included the Paragon to Nieto sales contract, which
provides that when Nieto has paid the debt in accordance with the contract, Paragon would convey the property to Nieto by
warranty deed. Nieto's exhibits include a quitclaim deed from Paragon to Nieto, and a quitclaim from FGB to Nieto. 
Although the quitclaim from Paragon is very short and unconditional, the FGB quitclaim includes a paragraph stating that it
is in no way intended to release any "Notes or Deeds of Trust" to the property owned by FGB. Nieto's exhibits also include
FGB's assignment to Wilshire of FGB's interest in the property. 

 Viewing all the evidence, it becomes apparent that a mistake was made when the Savings and Loan first entered into their
loan contract with Paragon, using the Paragon to Nieto contract as collateral, without also obtaining some right to the title
for the property. This error went unnoticed until after FGB took over the assets of the failed Savings and Loan. While
FGB, and then Wilshire, attempted to straighten out the error, Nieto obtained a quitclaim to the property from Paragon,
after threatening a lawsuit. Nieto did not obtain ownership by warranty deed, which is what he would have received upon
satisfaction of the sales contract. Nieto never finished paying for the property under the terms of the contract, but in fact,
owed a substantial amount on the property. The court, acting in equity, has attempted to disentangle the confusion wrought
by the original error and subsequent collapse of the Savings and Loan. Under the court's judgment, Wilshire, the holder of
the right to the payments, gains title, and Nieto, the original purchaser, is given an opportunity to acquire a warranty deed
after paying for the property. The evidence is legally and factually sufficient to support the court's judgment. Points of
error one and two are overruled. 

 In his third point of error, Nieto contends that the trial court erred by not granting his motion to strike Wilshire's first
amended petition. Nieto filed a motion to strike on the day of trial, arguing that Wilshire's first amended petition was not
filed in compliance with Texas Rule of Civil Procedure 63. Rule 63 allows a party to amend pleadings, however if a
pleading is filed within seven days of trial, leave of court must be obtained. Tex. R. Civ. P. 63; see Sosa v. Central Power
& Light, 909 S.W.2d 893, 895 (Tex. 1995). Nieto's motion alleges that Wilshire's amended petition was not timely filed,
inserts new parties and causes of action, and that Wilshire failed to serve notice on Nieto as required under the rules of civil
procedure. At the hearing on the motion, Nieto argued only that the amended petition had been untimely filed. 

 Wilshire filed its first amended petition on January 22, 1998. The trial was held on January 29, 1998. The Texas Supreme
Court has stated clearly that it was that court's intention in rule 63 "to authorize amendment without leave of court if it is
filed 'seven days or more before the date of trial.'" Sosa 909 S.W.2d at 895 (Tex. 1995). 

 Texas Rule of Civil Procedure 4 dictates how the time period set out in Rule 63 is computed. Sosa, 909 S.W.2d at 895. 
When computing a period of time "prescribed or allowed" by the rules of civil procedure, "the day of the act . . . after which
the designated time period begins to run" is not included. Tex. R. Civ. P. 4. "The last day of the period so computed is to
be included." Id. In Sosa, the plaintiffs filed a second amended original petition on November 10, 1993, with the summary
judgment hearing at issue scheduled for November 17, 1993. Sosa, 909 S.W.2d at 894. The court found this petition to be
timely filed. Id. at 895. In the instant case, Wilshire filed its amended petition on January 22, 1998, and the trial was held
on January 29, 1998. Wilshire's amended original petition was timely filed. 

 Nieto's second argument in his motion to strike was that Wilshire failed to timely serve him with notice of the amended
petition. Nieto again raises this contention in his appellate brief, but did not argue the point before the trial court. Nieto's
motion states that notice of the filing of Wilshire's amended petition was not received until the afternoon of January 28,
1998, the day before the trial was held. Nieto presented no evidence to the trial court to support this allegation. See
General Elec. Co. v. California Ins. Guar. Ass'n, 997 S.W.2d 923, 925 (Tex. App.--Beaumont 1999, no pet.) (pleadings are
not competent evidence). Nieto did not attempt to bring forth any evidence to the trial court to support his allegations.(2)

 Even had Nieto brought forth evidence to show that he was not served in accord with the requirements of the rules of civil
procedure, the trial court would not have been required to strike the amended petition. The Texas Rules of Civil Procedure
require that at the same time that a party files a pleading with the clerk of the court "a true copy shall be served on all other
parties." Tex. R. Civ. P. 21. If a party fails to serve a copy of a pleading on a party as required by Rule 21, the trial court
has the discretion to impose sanctions, which can include the striking of pleadings. Tex. R. Civ. P. 21b, 215.2(b)(5); see
also, Union City Body Co., Inc. v. Ramirez, 911 S.W.2d 196, 200 (Tex. App.--San Antonio 1995, no writ).(3) On the record
before this Court, we cannot say that the trial court abused its discretion by denying Nieto's motion to strike. Point of error
number three is overruled. 

 Nieto argues, in his fourth point of error, that Wilshire's suit was barred by the four-year statute of limitations contained in
section 16.035(a) of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a) (Vernon
Supp. 2000). The statute of limitations is an affirmative defense. Tex. R. Civ. P. 94; Fontenot Petro-Chem. & Marine
Servs., Inc. v. LaBono, 993 S.W.2d 455, 458 (Tex. App.--Corpus Christi 1999, pet. denied)(citing Woods v. William M.
Mercer, Inc., 769 S.W.2d 515, 517 (Tex. 1988)). It is the defendant's burden to plead the statute of limitations and secure
findings sustaining the plea. LaBono, 993 S.W.2d at 458. To preserve an error for appeal, the record must show that a
timely request, objection, or motion was made to the trial court that complies with the Texas Rules of Evidence or the
Texas Rules of Civil or Appellate Procedure. Tex. R. App. P. 33.1(a)(1)(B). The record shows that appellant did not plead
the statute of limitations at the trial level. Appellant thus has failed to preserve this issue for appeal. Point of error number
four is dismissed. 

 In his fifth point of error, Nieto challenges the legal and factual sufficiency of the evidence to support the trial court's
finding of fact that Paragon quitclaimed its interest in the property, "in consideration of the sum of $1,500.00 and for the
agreement by Nieto to take care of the underlying indebtedness." We agree that there is no evidence to support the sum of
$1,500.00. All of the testimony introduced dealing with the money paid by Nieto to Paragon as part of negotiating the
quitclaim states that Nieto paid $2,500.00 to Paragon. This error, however, is irrelevant to the trial court's judgment. 

 Contrary to Nieto's argument in his brief, there is sufficient evidence to support the trial court's finding that Paragon signed
the quitclaim with the expectation that Nieto would pay any underlying debt. LaVaude, Paragon's attorney, testified that
Paragon executed the quitclaim on the understanding that Nieto would take care of any problems involved with taking title
to the property, including dealing with any existing debt. Although there is testimony that would support a different
conclusion, we are unable to conclude that the trial court erred in making this finding. See Maritime Overseas Corp., 971
S.W.2d at 407. Point of error number five is overruled. 

 Wilshire filed a brief in answer to Nieto's appeal, in which they raise a cross-point of error. Wilshire failed to file a notice
of appeal. Any party seeking to alter the trial court's judgment must file a notice of appeal. Tex R. App. P. 25.1(c); Quimby
v. Texas Dept. of Transp., 10 S.W.2d 778, 781 (Tex. App.--Austin 2000, no pet. h.) We may only award a party who does
not file a notice of appeal more favorable relief than did the trial court upon a showing of "just cause." Tex. R. App. P.
25.1(c). Wilshire has not attempted to show "just cause" for overlooking its failure to file a notice of appeal. We therefore
may not consider Wilshire's cross-point. 

 The judgment of the trial court is AFFIRMED. 





____________________________________ 

LINDA REYNA YAÑEZ 

Justice 





Do not publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

the 10th day of August, 2000. 

1. The record is incomplete as to the details of the foreclosure. Apparently, in conjunction with the sale to Wilshire, FGB
foreclosed on a deed of trust executed by Chalet Homes, Inc. to Daniel Wyers, trustee, on the disputed property. This deed
of trust had apparently been conveyed to Paragon prior to Paragon's contract with Nieto.

2. In its appellate brief, Wilshire claims that the amended petition was actually served on Nieto the same day the amended
petition was filed, January 22, 1998. Wilshire directs the attention of this Court to their appendix, which supposedly
contains a receipt from a piece of certified mail delivered to Nieto on the same date the amended petition was filed. This
appendix does not constitute a part of the appellate record in this case. Tex. R. App. P. 34.1. Although it is not part of the
record, we do note that the receipt to which Wilshire refers is clearly dated January 28, 1998. If the receipt is, in fact, from
the certified mailing containing Nieto's copy of the amended petition, then this would directly contradict Wilshire's
statement in its appellate brief. 

3. This Court has held that if a party's failure to serve a pleading as required by Rule 21 results in the other party not
receiving the pleading, then the pleading may not be used against the party who did not receive it. Dunn v. Menassen, 913
S.W.2d 621, 626 (Tex. App.--Corpus Christi 1995, writ denied).