**SHEARSON LEHMAN HUTTON, INC., F/K/A Shearson Lehman Brothers, Inc., Appellant,**

**v.**

**Stuart TUCKER, Appellee.**

**No. 13-89-402-CV.**

Court of Appeals of Texas, Corpus Christi.

March 28, 1991.

Bob J. Spann, Spann & Smith, Corpus Christi, William D. Sims, Jr., Wills S. Montgomery, Jenkens & Gilchrist, Dallas, James R. Harris, Harris & Thomas, Rita C. Berthelot, Harris & Thomas, Corpus Christi, for appellee.

Jorge C. Rangel, Rangel & Chriss, Corpus Christi, Eliot P. Tucker, Mandell & Wright, Houston, for appellant.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

Stuart Tucker, appellee, brought suit against appellant, Shearson Lehman Brothers, Inc., for fraud, breach of contract, and slander. The trial court directed a verdict against appellee on all grounds except those relating to slander. Tucker was a former employee of Shearson who was terminated for violating a Shearson company policy. Tucker alleged that a Shearson senior vice-president of sales, Jonathon Wilde, made statements that Tucker (1) was going to lose his license as a broker; (2) was in big trouble with the Securities and Exchange Commission; and (3) would never work again as a broker. Tucker alleged that Wilde made the statements to two former clients of Tucker who contacted Shearson regarding the status of their accounts. The trial court directed a verdict in favor of Wilde, individually.

A jury found that the alleged statements were false, published and slanderous, and that the statements were made with malice. The jury awarded $212,875.00 for past and future damage to Tucker's reputation, $84,525.00 for lost earnings in the past, $19,791.66 for past mental anguish, humiliation and embarrassment, and $1,000,000.00 in exemplary damages.

Appellant raises eleven points of error. Appellant complains that the evidence is legally and factually insufficient to support the jury's finding of slander and that the

trial court erred in refusing to compel arbitration. Furthermore, appellant argues that the trial court erred in admitting certain evidence and in allowing an undisclosed witness to testify. Finally, appellant complains of the trial court's charge to the jury, the award of actual and exemplary damages and failure to award it attorney's fees. By a single cross-point of error, appellee complains of the trial court's granting a directed verdict in favor of Jonathon Wilde, individually. We affirm the trial court's judgment.

By points of error one and thirteen, appellant argues that the trial court erred in denying its motion to compel arbitration under 9 U.S.C. § 3 (1970) ("Arbitration Act"), and in failing to award attorney's fees against Tucker for failing to submit to arbitration in accordance with his employment contract. On November 3, 1986, the trial court heard appellant's motion to compel arbitration. In support of its position that the dispute was "referable to arbitration," appellant filed an affidavit which alleged that Tucker agreed to arbitrate any dispute arising from his employment with Shearson. An employment application, attached to the affidavit as exhibit "A" provided that Tucker agreed to "arbitrate any dispute, claim or controversy that may arise between me and my firm ... *that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register as indicated in Question 8.*" (emphasis added). The rules, constitutions, or by-laws indicated in "Question 8" were not presented to the trial court. Tucker argued that Shearson had not "proved" that the dispute was subject to arbitration. The trial court agreed and refused to grant the motion to compel. At a second hearing on November 14, 1988, appellant attempted to present additional evidence regarding the motion to compel arbitration. The trial court refused to allow additional evidence stating that the original decision to deny the motion to compel would stand. Appellant did not make an offer of proof at the second hearing.

■ There is a strong national policy favoring arbitration and doubts regarding the availability of arbitration are resolved in favor of arbitration. *Life of Am. Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 413 (5th Cir.1984). The Arbitration Act provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration *under such an agreement*, shall ... stay the trial of the action until such arbitration has been had.

9 U.S.C. § 3 (1970) (emphasis added). When a written arbitration agreement exists, the courts must decide whether a dispute is subject to arbitration on the basis of the contract between the parties. *Life of Am. Ins. Co.*, 744 F.2d at 413. Arbitration is mandated when the arbitration clause on its face is broad enough to encompass the parties' claims. *Id.* Hence, in considering whether to stay proceedings under the Arbitration Act, the trial court must determine whether the parties agreed to arbitrate and the scope of the arbitration agreement. *Creative Sec. Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 965 (S.D.N.Y.1987).

■ Here, the arbitration clause does not provide any basis for determining whether the parties' dispute is referable to arbitration. The clause *explicitly conditions* arbitration upon a showing "that [the dispute] is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which [appellee] register[s]...." No evidence was before the trial court regarding the applicable rules, constitutions or by-laws governing the type of disputes subject to arbitration. Arbitration is warranted unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation which would cover the dispute at issue. *Wire Serv. Guild v. United Press Int'l*, 623 F.2d 257, 260 (2nd Cir.1980). The evi-

dence before the trial court is clearly susceptible to an interpretation that the dispute at issue was not subject to arbitration. Similarly, regarding attorney's fees, no evidence was presented to the trial court that Tucker breached his employment contract to arbitrate.

■ Appellant, as movant, had the burden to present evidence of an arbitration agreement which governed the dispute at issue. The evidence before the trial court merely established the existence of a conditional agreement to arbitrate. While doubts regarding the scope of an arbitration clause are to be resolved in favor of arbitration, there must be an initial showing that the parties agreed to arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Absent such evidence, we find that the trial court did not err in denying appellant's motion to compel arbitration and in refusing to award attorney's fees. We overrule points of error one and thirteen.

By points of error two and three, appellant assails the legal and factual sufficiency of the evidence to support the jury findings that the statements were slanderous, false, and published. Shearson argues that, as a matter of law, the alleged statements are not slanderous because the statements are predictions regarding future events which can not be proven false. Accordingly, Shearson contends that the statements are opinions protected by the First Amendment. We disagree.

In a defamation action involving public figures, officials and/or matters of public concern, a plaintiff must prove "actual malice." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 384, 94 S.Ct. 2997, 3029, 41 L.Ed.2d 789 (1974). Under the First Amendment "actual malice" is defined as a *false statement of fact* made with knowledge that the statement was false or with reckless disregard as to whether the statement was true. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26,

11 L.Ed.2d 686 (1964). However, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Supreme Court upheld a state court award of actual and presumed damages against a credit reporting agency which negligently reported that a business had filed for bankruptcy, which was untrue. *Dun & Bradstreet*, 472 U.S. at 760, 105 S.Ct. at 2946. The Court held that speech on matters of purely private concern is of less First Amendment importance and that proof of "actual malice" is not required to recover actual, presumed, or punitive damages under state defamation law. *Id.* at 763, 105 S.Ct. at 2947. Here, it is undisputed and the record establishes that this case involves purely private persons and matters of private concern.

■ Moreover, in *Milkovich v. Lorain Journal Co.*, —— U.S. ——, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), the Supreme Court held that there was no separate constitutional privilege for opinion under the First Amendment. *Milkovich*, at ——, 110 S.Ct. at 2707. The Court recognized that a statement of "opinion" may include an implied assertion of objective fact. *Id.* at ——, 110 S.Ct. at 2705. Thus, opinions or ideas may be actionable if they imply false statements of objective fact. *Id.* at —— – ——, 110 S.Ct. at 2705–2707. Texas defamation law embraces this view. This Court has held that an opinion may be actionable in a defamation case if the statement contains an implied assertion of fact. *See First State Bank v. Ake*, 606 S.W.2d 696, 699 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

■ Whether statements are capable of the defamatory meaning the plaintiff attributes to them is initially a question of law for the court. *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1989, no writ). The allegedly slanderous statements must be construed as a whole, in light of the surrounding circumstances or context in which a person of ordinary intelligence would understand the state-

ments. *Id.* at 498–99. Here, we find that Wilde's statements are not protected opinion. Wilde's statements that Tucker was going to lose his stockbroker's license, was in big trouble with the Securities and Exchange Commission ("SEC"), and would never work again as a stockbroker are statements of fact which were capable of damaging Tucker's reputation as a stock broker.

Even assuming, that the statements could be characterized as opinions, the statements clearly imply the existence of undisclosed facts that Tucker had engaged in serious misconduct, which adversely reflected upon his reputation and fitness as a stockbroker. The recipients of the comments regarded the statements as definite, factual, and serious and believed that Tucker would not work as a stockbroker for another firm. Viewing the statements in the context in which they were communicated, we find that the recipients of the statements could reasonably conclude that the comments were based upon undisclosed defamatory facts.

▮ Slander is a defamatory statement orally published to a third party without justification or excuse. *Diaz,* 777 S.W.2d at 498; *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, no writ). Defamatory language may be actionable *per se,* that is, in itself, or may be actionable *per quod,* that is, only upon allegation and proof of special damage. *Goree v. Carnes,* 625 S.W.2d 380, 384 (Tex.App.—San Antonio 1981, no writ). Statements may be slanderous *per se* if they are so obviously harmful to the person aggrieved that no proof of their injurious effect is necessary to make them actionable. Among the matters characterized as slanderous *per se* are those that affect a person injuriously in his office, profession, or occupation. *Bradbury v. Scott,* 788 S.W.2d 31, 38 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Tatum v. Liner,* 749 S.W.2d 251, 258 (Tex.App.—San Antonio 1988, no writ); *Butler v. Central Bank & Trust Co.,* 458 S.W.2d 510, 514 (Tex.Civ. App.—Dallas 1970, writ dism'd).

▮ Wilde's statements present Tucker as about to lose his license because of professional misconduct. This certainly is within the traditional characterization of what is slanderous *per se* because it is aimed at his conduct as a licensed stockbroker and it asserts a matter incompatible with his practicing that profession. The statements were harmful to Tucker's reputation as a stockbroker and are slanderous *per se.*

▮ Appellant argues that the evidence is legally and factually insufficient to support the jury's findings that the defamatory statements were published, false and the proximate cause of damage to Tucker. In determining the legal and factual sufficiency of the evidence the court considers all the evidence, and the reasonable inferences therefrom which, viewed in its most favorable light, supports the trial court's judgment. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Allied Fin. Co. v. Garza,* 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

▮ On the issue of falsity, Tucker testified that all of Wilde's statements were false. Tucker stated that he was not under investigation or "in big trouble" with the SEC, did not lose his license as a stockbroker and did work again as a stockbroker. There was evidence, however, that Tucker was in trouble with the National Association of Security Dealers ("NASD"), and was fined by that organization for offering a security for sale before it was approved for sale. We find sufficient evidence to support the jury's findings that Wilde's statements were false.

▮ The evidence regarding "publication" came from the two recipients of Wilde's statements, Mills Latham and Abraham Moss. A "publication" is defined as either a negligent or intentional act that communicates a defamatory matter to a

person other than the person defamed. *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 380 (Tex.App.—Texarkana 1989, no writ). Latham and Moss testified that Wilde came to their offices after they asked about the status of their accounts at Shearson. Wilde made the defamatory statements in their presence and they understood the defamatory significance of the statements. Latham testified that he understood Wilde's statement that Tucker was going to lose his license as a "definite and knowledgeable" prediction. Moss testified that he believed Wilde's statements and became "angry" with Tucker as a result.

■ On the issue of damage, slander is actionable *per se* (without proof of special damage) if it injures one in his business or profession. *Bradbury,* 788 S.W.2d at 38; *Tatum,* 749 S.W.2d at 258. As discussed above, we find the statements were slander *per se.* When words are slanderous *per se,* the law presumes actual damage. *Bradbury,* 788 S.W.2d at 38; *Tatum,* 749 S.W.2d at 258. We find the evidence regarding publication, falsity and general damages is legally and factually sufficient to support a finding of liability for slander. Points of error two and three are overruled.

By points of error five and five A, appellant complains of the sufficiency of the evidence to support the jury's awards of damages and the trial court's failure to instruct the jury regarding the definition of mental anguish. The jury awarded Tucker $84,525 for lost earnings in the past, zero for earnings to be lost in the future, $84,525 for injury to his reputation in the past, $128,350 for future injury, and $19,791.66 for mental anguish, humiliation and embarrassment in the past, but zero damages for future injury.

■ Damages recoverable in a slander case include compensation for injuries to reputation or character, mental anguish and other like wrongs incapable of money valuation. *Vista Chevrolet, Inc. v. Bar-*

*ron,* 698 S.W.2d 435, 441 (Tex.App.—Corpus Christi 1985, no writ). Special damages, such as lost income, are also recoverable upon pleading and proof. *Id.* Here, Tucker presented evidence of his income during the years prior to his termination of employment with Shearson. Evidence was also presented concerning his income following his termination and the subsequent slander. Based upon a comparison of his past and current income, Tucker testified that his lost income to date was $87,000.00 and estimated his lost income in the future to be $600,000.00. Tucker further testified that the damages he was seeking were caused by Shearson's slanderous statements. The jury awarded $84,525.00 in lost income in the past and zero damages for lost income in the future. We find the evidence was sufficient to support the jury's award for lost income caused by the slander.

■ Appellant complains of the amounts awarded for the damage to Tucker's reputation by the slander, and asserts that the record does not support any damage to his reputation. When the slander is about the professional dealings of the plaintiff, and thus is slander *per se,* no independent proof of damage to his reputation is required, as the slander itself gives rise to a presumption of these damages. *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984). Because of this presumption, damages are recoverable for mental anguish. *Id.* Moreover, several witnesses testified that Tucker's reputation was injured as a result of the statements, and that he suffered economic loss.

■ Appellant also argues that the jury should have been instructed regarding the definition of mental anguish. As discussed above, mental anguish is a general damage which is presumed in a slander *per se* case. The Texas Supreme Court has disapproved of construing "mental anguish" as a technical term requiring definition. *Trotti v. K-Mart Corp.,* 686 S.W.2d

593 (Tex.1985). Ordinary words used in their common meanings are not required to be defined. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 814 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In light of the above, we find that the trial court did not err in failing to define mental anguish. We overrule points of error five and five A.

By point of error four, appellant complains that the trial court erred in allowing an undisclosed witness to testify. Appellant propounded interrogatories requesting the identities of "every person with knowledge of any facts relevant to any matter in support of your claims." In response, the name Rick Heinz was included along with the names of numerous other individuals. A second, more specific, interrogatory was propounded which requested the names of individuals with knowledge of the alleged slander. Heinz' name was not included in the response. At trial, appellee called Heinz to testify and the following exchange took place:

> Q: Has any broker from Shearson ever said to you that Stuart Tucker was going to lose his license.
>
> A: Yes.

Thereafter, appellant objected on the grounds that Heinz had not been properly designated as a witness with knowledge of the alleged slander. The trial court overruled the objection. Heinz was allowed to testify regarding the alleged slander, that Tucker's reputation was damaged, and that he had talked with others who had also heard the defamatory statements. Heinz could not identify who at Shearson made the defamatory statements.

■ A party has an affirmative duty to identify witnesses with knowledge of relevant facts and expert witnesses in response to an appropriate inquiry. Tex.R.Civ.P. 166b(2)(d) & (e). The sanction for failing to respond to interrogatories is the automatic exclusion of the unidentified witnesses' testimony. *See Alvarado v. Farah Mfg. Co.,* 34 Tex.Sup.Ct.J. 107, 108–09 (November 21, 1990); *H.E.B., Inc. v. Morrow,* 714 S.W.2d 297, 298 (Tex.1986); Tex.R. Civ.P. 215(5). However, if the trial court finds that the party had good cause for failing to answer the interrogatories, it may, in its discretion, admit the testimony. Tex.R.Civ.P. 215(5); *see also Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989). The party offering the testimony has the burden of showing good cause for its failure to answer. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 (Tex. 1989); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243, 246 (Tex.1985).

■ Here, the trial court in this case made no specific finding of good cause in allowing Heinz to testify and appellees failed to explain why the witness was not timely designated.[1] Good cause was not established. *See Boothe,* 766 S.W.2d at 789. We find that the trial court erred in admitting Heinz' testimony regarding slander. Having determined that the trial court erred in admitting Heinz' testimony, we must now determine whether that error is reversible. *See Alvarado,* 34 Tex.Sup. Ct.J. at 109–10; *Boothe,* 766 S.W.2d at 789; *Ramos v. Champlin Petroleum Co.,* 750 S.W.2d 873, 877–78 (Tex.App.—Corpus Christi 1988, writ denied). For the error to be reversible, the trial court's error must have been reasonably calculated to cause and probably did cause the rendition of an improper verdict. *Boothe,* 766 S.W.2d at 789; *Gee,* 765 S.W.2d at 396; *Ramos,* 750 S.W.2d at 877; Tex.R.App.P. 81(b)(1). When the evidence is cumulative and not controlling on a material issue dispositive of the case, it will not ordinarily be reversible error. *Gee,* 765 S.W.2d at 396.

■ In this case, the record establishes that the testimony was cumulative and not

---

1. Heinz' subsequent testimony established that Tucker was unaware of Heinz' knowledge of the slander until the day before he testified. Tuck-er did not bring the matter to the trial court's attention prior to the court's ruling allowing Heinz to testify.

controlling on a material issue dispositive of the case. Heinz' testimony regarding the defamatory statements was cumulative of testimony previously given by Latham and Moss. The testimony about Tucker's reputation was immaterial because the defamatory statements were slanderous *per se* and damage is presumed. Moreover, Heinz testified without objection that an unidentified broker at Shearson stated that Tucker was going to lose his license. We find that any error the trial court committed was not reasonably calculated to cause and did not cause the rendition of an improper verdict. Point four is overruled.

By point six, appellant argues that the trial court erred in submitting the wrong definition of "malice" and that the evidence was legally and factually insufficient to support the submission of that issue to the jury. The trial court instructed the jury that "a statement is made with malice if it is made with knowledge that it is false or with reckless disregard of whether it was false or not." This is the same as the definition of "actual malice" in defamation cases.

Appellant argues that a proper definition of malice would include ill will and cites numerous cases, none of which are defamation cases, for the proposition. However, in the law of defamation, it is not necessary that malice be shown by proof of ill will, animosity, or hatred; such animus is inferred from the utterance of a false statement knowing its falsity or with such recklessness that it indicates a disregard of its truth or falsity. *See Leyendecker*, 683 S.W.2d at 375. Thus, actual malice embraces a higher level of culpability than mere ill will or animosity. Negligence, failure to investigate the truth or falsity of the statements prior to publication, or failure to act as a reasonable prudent person is insufficient to support a finding of malice. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The trial court's definition of actual malice was proper as a definition of common law malice and will support an award of exemplary damages.

Here, the truth or falsity of the underlying assertions of fact contained in Wilde's statements about Tucker were uniquely within the knowledge of Shearson and Wilde. Wilde testified that he heard around the office that Tucker "would or could" lose his stockbroker's license. Wilde testified that he did not make an inquiry or attempt to verify the truthfulness of the rumors from any source outside the Shearson office. He neither contacted the SEC nor the NASD concerning Tucker's status prior to communicating the false and unverified allegations to Latham and Moss. Given the damaging nature of the statements to Tucker's professional reputation, the context in which they were made, Wilde's lack of personal verification, and the statement's falsity, we find that the evidence is legally and factually sufficient to support the jury's finding of malice. We overrule point of error six.

By points seven, nine, and ten, appellant alleges that the trial court erred in not ordering remittitur of actual and punitive damages and that the jury's award of punitive damages violates due process. We disagree. Here, the evidence established that Wilde "published" statements concerning Tucker which were slanderous *per se* and the jury awarded actual and special damages of $317,191.66. In considering a request for remittitur, the court reviews the factual sufficiency of the evidence supporting the jury's award. *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 142 (Tex.App.—Corpus Christi 1986, writ denied). The damages resulting from slander are purely personal and cannot be measured by any fixed rule or standard, and the amount awarded rests largely in the discretion of the jury. *Id.; Ake*, 606 S.W.2d at 702. We find the evidence supporting the jury's award of actual damages sufficient.

Regarding punitive damages, the record establishes that the jury was properly instructed that if they found Wilde's statements were made with knowledge that

they were false or with reckless disregard for whether they were false, then they could award exemplary damages. "Exemplary damages" was defined as:

> [A]n amount that you may in your discretion award as an example to others and as a penalty to or punishment of Shearson, in addition to any amount that you may have found in actual damages.

The jury awarded $1,000,000.00 in exemplary damages. Having carefully reviewed the record as discussed above, the evidence is sufficient to support the jury's award of exemplary damages. *See Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex. 1986); *John Deere Co. v. May*, 773 S.W.2d 369, 379 (Tex.App.—Waco 1989, writ denied). The award of exemplary damages bears a reasonable relationship to the actual damages and special damages awarded by the jury and is not excessive under the facts of this case. *See May*, 773 S.W.2d at 379 (discussing rationales and case law pertaining to punitive damage awards); *Ake*, 606 S.W.2d at 702.

Appellant argues that the due process clause prohibits "grossly excessive" damage awards and that the punitive damage award "entered [in this case] has no reasonable relationship to the actual fine entered." Again we disagree.[2] Texas law provides significant procedural safeguards against improper awards of excessive damages. At the trial level, appellant presented a motion for new trial which complained of the excessiveness of the jury's exemplary damage award. Appellant filed a motion to vacate the trial court's judgment and request for remittitur. The record establishes that the trial court upon an examination of the record overruled the motion. On appeal, appellant attacks the sufficiency of the evidence and again request remittitur. As discussed above, we have carefully reviewed the record and determine that the evidence is sufficient to support the jury's award of exemplary damages.

Appellant was not denied due process of law. In light of the above, we overrule points seven, nine and ten.

By points of error eight and eight A, appellant argues that exemplary damages were improper because the evidence is factually and legally insufficient to establish that Shearson was legally responsible for Wilde's statements. Unlike an award of compensatory damages against an employer for the torts of an employee committed in the course and scope of his employment, liability for punitive damages does not flow from the employment relationship through the doctrine of respondeat superior. Rather, the employer must have either some direct culpability, such as ratification of the act, or recklessness in retaining or hiring the employee, or the agent must have more authority than a mere employee, such as either a manager or vice-principal.

Here, the jury was asked, without instruction, to determine the amount of exemplary damages to be assessed against Shearson. Shearson did not object that the charge omitted an instruction regarding the elements necessary for Shearson to be held responsible for exemplary damages arising from Wilde's actions. Tex.R.Civ.P. 279 provides that when a element of a ground of recovery is omitted from the charge without request or objection, and there is factually sufficient evidence to support the jury's finding, the omitted element shall be deemed in support of the judgment. *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667 (1990); *Treasure City v. Strange*, 620 S.W.2d 811, 813–14 (Tex.Civ.App.—Dallas 1981, no writ). In such a situation, the parties are considered on appeal to have waived a jury trial on the unsubmitted element and to have submitted it to the trial court for resolution. *Wilson v. Remmel Cattle Co.*, 542 S.W.2d 938, 942 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Hence, Shearson's liability for

---

2. This case does not involve the repeated award of punitive damages arising from a single act of tortious conduct. *See Celotex Corp. v. Tate*, 797 S.W.2d 197 (Tex.App.—Corpus Christi 1990, no writ).

exemplary damages because of Wilde's acts will be deemed found by the trial court if supported by sufficient evidence.

A corporation may be liable for exemplary damages because of the acts of an employee or agent if 1) the principal authorized the doing and the manner of the act, or 2) the employee or agent was unfit and the principal was reckless in employing him, or 3) the employee or agent was employed in a managerial capacity and was acting in the scope of employment, or 4) the employer or a manager of the employer ratified or approved the act. *King v. McGuff,* 149 Tex. 432, 234 S.W.2d 403, 405 (1950); *Southern Pac. Transp. Co. v. Harlow,* 729 S.W.2d 946, 952 (Tex.App.—Corpus Christi 1987, writ denied).

 Upon careful review of the entire record, we find no evidence that Shearson ratified or approved of Wilde's acts or that Wilde was an unfit employee and that Shearson was reckless in employing him. There is evidence, however, that Shearson authorized Wilde's actions and his status was such that he could be considered a manager or a vice-principal of Shearson. A vice-principal includes corporate officers, those who have authority to employ, direct, and discharge servants of the master, or those whom the master has confided the management of the whole or part of a department or division of the business. *Fort Worth Elevator Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 406 (1934); *Treasure City,* 620 S.W.2d at 814. Thus, we must determine whether the evidence is sufficient to find that Wilde was a vice-principal of Shearson or that Shearson authorized Wilde's actions.

 In reviewing the factual sufficiency of this evidence, we will apply the same standards and procedures we follow in reviewing the propriety of an explicit finding by a jury. When reviewing a point of error complaining that a finding is supported by insufficient evidence, an appellate court must examine all the evidence and determine if finding is so contrary to

the overwhelming weight of the evidence that it is clearly wrong. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); *In re King's Estate,* 244 S.W.2d at 661. We may reverse if the great weight of the evidence mandates an opposite determination and then we will detail the evidence to show why the determination was so contrary to the evidence to be clearly wrong. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). We will reverse and remand only if the trial court's judgment was clearly wrong or manifestly unjust. *Id.*

Wilde was a senior vice-president of sales with Shearson. He was one of only two brokers in the Shearson office who had such a title among as many as fourteen Shearson brokers. Moreover, the evidence showed that Wilde was acting within the scope of his employment when he made the statements to Latham and Moss during a sales call on behalf of Shearson. While Wilde denied having any management responsibilities, he conceded that he "had authority to say whatever [he] did say" to Latham and Moss and that he had a "little" role in recruiting new stockbrokers.

We find that the above evidence is sufficient to support a deemed finding that Wilde was a vice-principal of Shearson and that Shearson authorized Wilde's acts. First, the undisputed evidence showed that Wilde was a senior vice-president of sales at Shearson. A vice-president is one who acts in the stead or place of the president. *See* BLACK'S LAW DICTIONARY 1404 (5th ed. 1979). This is sufficient evidence from which the trial court could find that Wilde, being a corporate officer, had managerial responsibilities at Shearson. Indeed, Wilde's testimony was that he had a role in the recruiting of employees and his title suggests that he was given authority over the sales division of Shearson. Moreover, Wilde's testimony that Shearson authorized him to "say whatever [he] did say" is some evidence that Shearson authorized his acts.

Although whether Wilde actually made slanderous statements was disputed, the jury found that Wilde made the statements attributed to him by Tucker. We find the evidence sufficient for the trial court to have found that the status of Wilde was that of manager or vice principal. Thus, we find the issue of Shearson's liability for Wilde's acts deemed in conformity with the trial court's judgment. Points of error eight and eight A are overruled.

■■■■ By point of error eleven, appellant argues that the trial court erred in not instructing a verdict for Shearson because Wilde's statements were privileged. We initially note that there is no evidence supporting the existence of an absolute privilege under these facts. A qualified-privilege exists when statements are made to persons with a common interest in the matter to which the communication relates. *Henry C. Beck Co.*, 711 S.W.2d at 335. A qualified privilege is lost if the communication is made with malice. *Id.* Thus, as appellant properly concedes in its brief, the jury's finding of malice in this case vitiates any claim of qualified privilege which could have been asserted. *See id.* We overrule point of error eleven.

■■■■ By point of error twelve, appellant complains of the trial court's admission into evidence an anonymous letter. The anonymous letter stated that Tucker was having problems making his house payment. The letter was not offered for the truth of the matter asserted in the letter; the letter was offered to show that *someone* was trying to cause Tucker trouble at his job as a broker following his termination from Shearson. Tucker testified without proper objection and ruling by the trial court that in his opinion the letter was written by a broker at Shearson. The trial court admitted the letter stating "I will allow it for whatever weight the jury wishes to give it, if the jury wishes to give it any weight at all."

Appellant argues that the letter constitutes the only evidence of malice before the jury. We disagree. As discussed above, absent the letter, we find that the evidence is sufficient to support the jury's finding of malice. Assuming *arguendo* that the trial court erred in admitting the letter, we find that the letter was not reasonably calculated to cause and did not cause the rendition of an improper verdict. *See Boothe,* 766 S.W.2d at 789; *Gee,* 765 S.W.2d at 396; *Ramos,* 750 S.W.2d at 877; Tex.R.App.P. 81(b)(1). The letter did not refer to a matter dispositive of the case and was cumulative of other evidence relating to malice. *See Gee,* 765 S.W.2d at 396. The letter itself did not establish that Shearson was attempting to damage Tucker's reputation. Point twelve is overruled.

■■■■ By a single cross-point of error, appellee challenges the trial court's directed verdict in favor of Wilde, individually. As discussed above, evidence was presented that Wilde made statements concerning Tucker which were slanderous *per se.* It is well-settled that an employee of a corporation who commits, directs or participates in a tortious act while acting within the scope of his employment is personally liable for those acts. *Leyendecker,* 683 S.W.2d at 375. The trial court erred in directing a verdict in favor of Wilde. However, appellee conditions this cross-point upon a determination that this Court reverse and render on the issue of Wilde's individual liability. Otherwise, appellee expressly waives the cross-point. Pursuant to appellee's prayer for relief, the cross-point of error is waived.

The judgment of the trial court is AFFIRMED.