**FONTENOT PETRO–CHEM & MARINE SERVICES, INC. and FP & M Services, Inc., Appellants,**

v.

**Lynda LaBONO, Appellee.**

No. 13–97–420–CV.

Court of Appeals of Texas, Corpus Christi.

May 13, 1999.

Rehearing Overruled July 1, 1999.

Daniel D. Gartner, Fitzgerald & Gartner, James T. Liston, Attorney at Law, William B. Underwood, House, Kingsmill & Riess, Houston, for Appellant.

James R. Young, Attorney at Law, Houston, for Appellee.

Before Justices DORSEY, HINOJOSA, and KENNEDY.[1]

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

## OPINION

**NOAH KENNEDY, Justice (Retired).**

Appellee, Linda LaBono (hereinafter either LaBono or appellee), in her Eighth Amended Original Petition sued for slander and slander per se. She named as defendants an individual, Darill Fontenot, and two corporations, Fontenot Petro–Chemical and Marine Services, Inc. (Fontenot) and F.P. & M. Services, Inc. (F.P. & M.). She alleged that a vice-president and officer of both corporations, Dale Cormier, had made statements in the presence of employees of both corporations and customers of the corporations that appellee had been a prostitute in the past and had gained her wealth as a result of this activity. She further alleged that defendant Darill Fontenot made similar statements to employees of both corporations.

Her petition alleges that the original statements by Cormier were made in November of 1993 and that the further statements of this nature were made in the "break room" of both corporations in June of 1994. The "further statements" were alleged to have been made by Cormier and Darill Fontenot, the owner of F.P. & M.

There was no dispute that at the time of the alleged slanderous statements LaBono worked for F.P. & M. She maintains that she worked for both appellants. The alleged statements were originally made at a crawfish boil which was a part of a convention event attended by people in appellants' line of work.

Trial was to a jury which found:

Question No. 1—Appellee was slandered by Dale Cormier but not by Darill Fontenot.

Question No. 2—The slanderous statements made by Dale Cormier were slanderous *per se.*

Question No. 3—Fontenot Petro–Chemical and Marine Services, Inc. and F.P. & M. Services, Inc. were operating as a single business enterprise or an alter ego at the time of the slanderous statements.

Question No. 4—Dale Cormier was a vice-principal of both Fontenot and F.P. & M.

Question No. 5—Not answered.

Question No. 6—The slanderous statements of Dale Cormier were made in the scope of employment.

Question No. 7—Actual damages to LaBono totaled $265,000.

Question No. 8—The slander committed by Dale Cormier was committed with malice.

Question No. 9 did not award any exemplary damages against Darill Fontenot.

Question No. 10—Neither corporation was reckless in employing Dale Cormier.

Question No. 11 awarded $50,000 against each corporation as exemplary damages.

The court's judgment granted recovery to LaBono in the amount of $265,000 as actual damages against both corporations, jointly and severally, together with post-judgment interest and prejudgment interest. In addition, the court awarded $50,000 against each corporation as exemplary damages and ordered that the two corporations shall be jointly and severaly liable for the exemplary damages.[2]

 Prior to the trial before the jury, F.P. & M. pleaded the statute of limitations and requested summary judgment on the issue which was denied by the court. This denial of summary judgment is the basis of F.P. & M.'s first issue.

LaBono does not contest the fact that her suit against F.P. & M. was brought after the statute of limitations had run, *i.e.,* more than one year after the day the cause of action accrued.[3] She alleges, for the

---

2. Cormier was not named as a defendant and Darill Fontenot was found to have not slandered appellee.

3. Texas Civil Practice and Remedies Code, Ann. § 16.002 (Vernon 1986)

first time in her brief, however, that she was misled as to the existence of an additional party (F.P. & M.) through "false, sworn, discovery and affidavit testimony" which disclosed facts about the "employment involved in the occurrences made the basis of the suit."

 The statute of limitations is an affirmative defense. The defendant thus bears the initial burden to plead, prove, and secure findings to sustain its plea of limitations. Tex. Rules Civ. Proc. Rule 94 (Vernon 1979); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). The plaintiff may raise the discovery rule as an excuse for its failure to file suit within the appropriate period of limitations. *Id* at 517. A party seeking to avail itself of the discovery rule must therefore plead the rule in response to defendants assertion of the defense as a matter of avoidance. *Id* at 518.

*Woods* further stated:

A defendant who has established that the suit is barred cannot be expected to anticipate the plaintiff's defenses to that bar. A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived.

*Woods,* 769 S.W.2d at 518.

In the case before us, appellee relies upon *Palmer v. Enserch Corporation,* 728 S.W.2d 431 (Tex.App.—Austin 1987, writ ref'd.) and *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975). *Continental Southern* was a case similar to the one before us. Plaintiff first sued Continental Trailways, Inc. The bus and station were marked in large letters "Continental Trailways." On one side, near the rear of the bus, is the information, in one inch letters, that the bus was owned by Continental Southern Lines. Continental Southern moved for summary judgment after the limitations had run. The trial court denied defendant's limitation plea, which action was affirmed by the court of appeals. The supreme court reversed these judgments, the result of which affirmed defendant's plea of limitations, however, in the interest of justice, it remanded for a new trial to permit plaintiff to prove that defendant was cognizant of the facts, was not misled, or placed at a disadvantage. *Continental Southern,* 528 S.W.2d at 831. *Palmer* was a case where, in response to a motion for summary judgment based upon limitations, plaintiff amended his pleadings before the hearing, alleging liability of defendant in an additional capacity as the surviving corporation following a merger. Judgment for defendant was reversed and remanded for trial on its merits. In our case, appellee filed nothing in response to the motion for summary judgment. In addition, we note another difference between our case and those cited by appellee. Mr. Palmer was a total stranger to Ensearch as was Mrs. Hilland to Continental Southern Lines. LaBono, by her testimony, was an employee of both Fontenot and F.P. & M. She must have had some knowledge that they were interrelated before the lapse of the one year limitation following her first knowledge of the statements made about her.

We believe the case before us to be more properly governed by *Woods.*[4] Because summary judgment was improperly denied to F.P. & M., we reverse the judgment against it. In view of this holding it is not necessary that we consider this appellant's remaining issues.

---

4. *Woods* was authored by Chief Justice Phillips who observed "past opinions of this court have been less than precise in the terminology used to describe and classify the discovery rule." He continued, "the confusion is exemplified by the apparent assumption of both parties in this case and the Court of Appeals that defendent Mercer bore the burden of proving that Woods [plaintiff] discovered or should have discovered Mercer's misrepresentations in order to prevail on its affirmative defense of limitations. In view of this confusion we deem it appropriate to review and clarify the rules of pleading and proof governing assertion of the discovery rule in a trial on the merits."

Except for point of error two, the points of error contained in appellant Fontenot's brief are all "no evidence" or "insufficient evidence" points. In reviewing a "no evidence" point, we consider that evidence and reasonable inferences drawn therefrom in their most favorable light to support the jury's findings, disregarding all contrary evidence and inferences. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). When reviewing a factual insufficiency point, we will not set aside a jury finding merely because we believe that we would have reached a different and more reasonable result had we been jurors. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993).

■ Fontenot's first point of error alleges error in the award of exemplary damages of $50,000 against them for two reasons: (1) exemplary damages are not available because the jury found that neither company was reckless in hiring Cormier, and (2) the $50,000 amount is not supported by factually sufficient evidence. In ruling on this point we find it necessary to rule first on point of error five, that the jury's answer that Cormier was a vice-principal of Fontenot was not supported by legally and factually sufficient evidence.

The jury heard testimony that Cormier had authority to write checks on both Fontenot and F.P. & M. and had authority to hire and fire employees of both companies. The evidence was sufficient to justify the jury finding that Cormier was a vice-principal of Fontenot. *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 926 (Tex.App.—Corpus Christi 1991, writ dism. W.O.J.). We overrule point of error number five.

Having established that the jury's finding to error number five was not incorrect, we return to issue number one regarding the imputation of liability to Fontenot for Cormier's willful tort of slander. It is true that the jury found that Fontenot was not reckless in hiring Cormier. However, this Court has held that a corporation may be held liable for exemplary damages because of the acts of an employee or agent if the employee was employed in a managerial capacity and was acting in the scope of employment. *Shearson*, 806 S.W.2d at 926. We have defined a vice-principal to include corporate officers, those who have authority to employ, direct, and discharge servants of the master or those whom the management has confided the management or a part of a department or division of the business. In *Shearson* we said:

> We find the evidence sufficient for the trial court to have found that the status of Wilde was that of manager or vice-principal. Thus, we find the issue of Shearson's liability for Wilde's acts deemed in conformity with the trial court's judgment. *Shearson*, 806 S.W.2d at 927.

We also held that damages resulting from slander are purely personal and cannot be measured by any fixed rule or standard, and the amount awarded rests largely in the discretion of the jury. *Shearson*, 806 S.W.2d at 924. We overrule point of error number one.

■ In point of error number two, appellant Fontenot challenges the jury's answer to question six as a matter of law. In point three he challenges the answer as legally or factually insufficient.

In point two Fontenot says that as a matter of law an employee is outside the scope of his authority when he slanders a co-employee to others, citing *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 647 (Tex.1995). *Randall's* was a case where an employee of Randall's was also a customer on the occasion in question. When she went through the checkout counter she paid for several items but did not pay for a floral wreath she was holding in her hand. The checker rang up the other items then asked if there was anything else, to which the employee (plaintiff) replied in the negative. The checker reported her failure to pay for the wreath to management. Part of plaintiff's claim for damages involved a statement made by

another employee, a cosmetician, who was a subordinate of plaintiff. This employee made a statement to other employees, and also to customer's of the store, that plaintiff was a poor manager and that she took merchandise without paying for it. The court held that there was a qualified privilege which protected her statements to management but that the statements to customers and ordinary employees were outside the scope of her employment. In denying recovery against Randalls, however, the court also found that Randall's did not authorize, condone, or ratify this action.

We draw a distinction between the actions of a cosmetician in a department store and a person, such as Cormier, who writes checks and hires and fires employees. Cormier was found by the jury to be a vice-principal of Fontenot in question number four in which the court defined a vice-principal to be:

> A "vice-principal" of a corporation is a person who has the authority to hire, discharge and direct employees of the corporation who has the authority to manage the entire corporation or a department or division of its business.

■ The fact that an employee does an act that is unauthorized or that would not be approved by his employer does not mean that the employee was outside the scope of his employment. The employer is liable for the act of his employee, even if the specific act is unauthorized or contrary to express orders, so long as the act is done while the employee is acting within his general authority and for the benefit of the employer. *Hooper v. Pitney Bowes, Inc.,* 895 S.W.2d 773, 777 (Tex.App.—Texarkana 1995, writ denied).

Fontenot is not protected by law from the statements of Cormier and the jury heard evidence of what Cormier said sufficient to sustain their finding to question number six. We overrule points of error two and three.

■ Point of error four challenges the legal and factual sufficiency of the evidence to support the jury's finding that at the time of the slander Fontenot and F.P. & M. were operating as a single business enterprise or an alter ego. The jury heard evidence that the two companies shared employees. One nine-year employee, when asked if he worked with both companies, said, "well, I don't know. I always thought it was the same company." Another employee stated, "one week I would be on one payroll, the next week I would be on the other payroll." There was evidence that one company serviced customers which required that union employees be used while the other employed non-union employees and serviced companies who didn't care whether the employees were union. In this respect there was evidence that when union employees were needed appellants went to the union hall to hire employees.

In view of our ruling that the trial court erred in not granting summary judgment to appellant F.P. & M. based upon the statute of limitations, we do not consider it necessary to decide this point of error. However, in any event, there was evidence to support liability of Fontenot for Cormier's actions regardless of what connection Cormier may have had with F.P. & M. The jury's answer to question number four is supported by the evidence and point number four is overruled.

■ Point of error number six alleges factually insufficient evidence to support the award of damages in the amount of (A)$175,000 for injury to appellee's reputation and character, (B) $60,000 for loss of income, and (C) $30,000 for mental anguish. We have answered (A) and (C) in ruling on point of error number one wherein we held that damages resulting from slander are purely personal and cannot be measured by any fixed rule or standard, and the amount awarded rests largely in the discretion of the jury.

The jury found $60,000 to be the amount of appellee's lost income. LaBono testified

to several incidents resulting from the statements made by Cormier which made it impossible for her to continue to work for appellants. LaBono testified that her earnings the last full year she worked with appellants was $39,000. In the next partial year she made approximately the same amount, however for the next two years she made $7,200 and $14,000 respectively. Darill Fontenot testified that he had no problem with LaBono's work, that they had a good working relationship, and that at the time she quit he had no intention to let her go. He also testified that, had she not left, as far as he was concerned she would still be around. If LaBono had stayed with appellants and had earned what she did in each of the last two years ($39,000) her earnings would have totaled $117,000 to the time of her testimony at trial. As it happened, for the last three years prior to her testimony at trial she earned a total of $60,200.[5] The difference in these figures is $56,800, within $200 of what the jury found. When we allow the jury the discretion mentioned earlier we cannot say that the jury's finding is unsupported by the evidence. We overrule point of error number six.

Point number seven states that the trial court should have disregarded the jury's answer to question number eight, that Cormier acted with malice in making the alleged slander. The reason stated for this claim is that there is no evidence or insufficient evidence to show Cormier either had:

> Actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to plaintiff's rights, safety or welfare or entertained serious doubts as to the truth of his publication.

Appellant Fontenot cites *Hagler v. Proctor and Gamble Mfg. Co.*, 884 S.W.2d, 771, 772 (Tex.1994) in support of his point of error. *Hagler* holds that:

> Actual malice in the defamation context does not include ill will, spite or evil

motive, but rather requires sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Actual malice is not ill will; it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true. (Citations omitted).

*Hagler,* 884 S.W.2d at 772.

We hold that the jury, having heard that Cormier said that LaBono was a prostitute and that is how she got her accounts, could reasonably have found that he made the statement with reckless disregard of whether it was true. This is so especially because at trial neither Cormier, nor anyone else offered any proof that what Cormier had said was true. We overrule point of error number seven.

We REVERSE and DISMISS that portion of the trial court's judgment which awards actual and exemplary damages, interest thereon, and costs against appellant F.P. & M. Services, Inc. We AFFIRM the remainder of the judgment.

---

5. Approximately $39,000, $7,200, and 14,000.