

NUMBER 13-10-00054-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BRUCE OLSON, **Appellant,**

**v.**

MICHAEL J. WESTERGREN, **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

This appeal arises from a jury trial in which appellee Michael J. Westergren obtained a verdict in his favor on his defamation claim against appellant Bruce Olson. By four issues, Olson argues that: (1) the trial court erred in determining that Westergren is a private-figure plaintiff; the evidence was factually insufficient to support the jury's

findings that (2) Olson's statements were made with actual malice, and (3) Westergren suffered $10,000 in damages both for injury to his reputation in the past and future[1]; and (4) the trial court erred in failing to include a definition of reckless disregard in the jury charge. We affirm.

## I. BACKGROUND[2]

Westergren is a former district court judge, justice of the peace, and county attorney and, at the time of the incident that gave rise to this case, was employed as in-house counsel to Del Mar College in Corpus Christi, Texas. Olson is a professor at Del Mar. In November 2006, Olson appeared as a guest on a local talk-radio show and had a discussion with the host about various employment discrimination charges made by Theresa Cox, a former Del Mar employee. Included in those charges were allegations that Westergren had made sexually suggestive comments to Cox and exposed Cox to pornography in the workplace.

Westergren sued Olson for defamation. The case was tried to a jury, which returned a verdict in Westergren's favor. Specifically, the jury found that Olson published statements about Westergren having problems with pornography.[3] The jury found that Olson made the statements without ordinary care as to their truth and

---

[1] In a separately stated issue, Olson complains that the damages awarded were excessive; but his brief of that issue is an almost verbatim reiteration of his complaint that the evidence was factually insufficient to support the damages. As such, we do not recognize it as a separate issue. See TEX. R. APP. P. 47.1.

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. See TEX. R. APP. P. 47.4.

[3] One of the statements involved Westergren exposing both Cox and "another senior female administrator" to pornography in the workplace.

Olson does not challenge the jury's findings that the statements were defamatory and false.

2

defamatory character and with actual malice. The jury awarded Westergren $10,000 in damages for injury to his reputation in the past and $10,000 for injury to his reputation in the future. The trial court entered judgment on the jury's verdict. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By two issues, Olson argues that the evidence was factually insufficient to support the jury's findings on actual malice and reputational damages. In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). Here, in our review of the appellate record, we have found no objections to the charge or to the definitions of either actual malice or reputational damages. Thus, we review the evidence under the law as set out in the jury charge. *See Romero*, 166 S.W.3d at 221.

### A. Actual Malice[4]

By his second issue, Olson argues that the jury's actual malice findings were supported by factually insufficient evidence. Under its charge, the jury was required to find actual malice by clear and convincing evidence. Because Olson did not object to the charge in this regard, we must determine if the actual malice findings were supported by this higher standard of evidence. *See id.*

---

[4] Olson complains by his first issue that the trial court erred in determining that Westergren was a private figure for purposes of the defamation suit. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571-73 (Tex. 1998) (outlining the various categories of defamation plaintiffs, including public officials, public figures, and private figures). Olson contends that the evidence established that Westergren was a public official or public figure and, as such, was required to prove that Olson made his defamatory statements with actual malice. *See id.* at 571. However, because the jury was charged as to actual malice and because we conclude that the evidence was sufficient to support the jury's finding that Olson acted with actual malice, determining whether Westergren was a private or public figure is not necessary to the disposition of the appeal, and we need not address the issue. *See* TEX. R. APP. P. 47.1.

3

## 1. The Evidence

At trial, the evidence showed that in early 2006, Cox filed a series of grievances alleging that she had been retaliated against for participating in the investigations of certain charges of discrimination by Del Mar employees and students and that there was a hostile work environment created by the Del Mar president and Westergren. The grievances were referred to an outside law firm for investigation, which conducted extensive interviews with all the involved parties, including Cox and Westergren. That firm then issued a report encouraging the sides to mediate. The report also cleared Westergren of any wrongdoing.

After the report was issued, Cox filed a charge of discrimination with the Equal Employment Opportunity Commission. Cox testified that the same events that gave rise to her earlier grievances underlay her charge of discrimination. The charge was the first time Cox made any allegations of sexual misconduct by Westergren.

Olson testified that he is a history professor and the chair of Del Mar's social sciences department. Olson considers himself an advocate for faculty, employee, and student rights at the college and has participated in numerous complaint procedures and investigations against administrators at the college. Olson testified that he is a member of two professional academic associations, both of which encourage their members to consider and respect diverse points of view.

Olson testified that he first came into possession of Cox's charge of discrimination when two faculty members brought him a copy. The faculty members had been given the charge by a janitor who, while cleaning a room after a board of regents meeting,

4

discovered the charge left behind on a table. Olson testified that, although the copy of the document he originally received did not indicate it was private and confidential, he was aware during his radio appearance that the document was private, confidential, and part of an on-going investigation.

With regard to the veracity of the allegations in the charge of discrimination, Olson testified at trial that he called Cox and she confirmed to him over the phone that the allegations were true. However, in his deposition, Olson did not testify that he confirmed the truth of the allegations with Cox before he published them on the radio; in his deposition, Olson testified merely that he contacted Cox to inform her that the charge was in open circulation. Olson testified that he relied on the allegations in the charge, in part, because the charge was notarized. Finally, Olson testified that he was aware of the contents of the outside law firm's report and that the report cleared Westergren of wrongdoing with regards to Cox's complaints. He considered the report a "whitewash" for purposes of clearing Westergren, but he relied on the report to the extent that Cox was found to be a "stellar" employee.

## 2. Analysis

The jury was instructed as follows regarding actual malice:

Do you find by clear and convincing evidence that at the time [Olson] [made the statements regarding Westergren's problems with pornography], [Olson] either knew [they were] false as [they] related to [Westergren], or [Olson] made the statement[s] with a high degree of awareness that [they] were] probably false or with a reckless disregard as to whether [they were] true or false?

"Clear and convincing evidence" was defined in the jury charge as "that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the

truth of the allegations sought to be established."  "High Degree of Awareness" was defined as "strongly suspected."  Because Olson did not object to the jury charge, we are guided by this law in our analysis of the evidence.  *See Romero*, 166 S.W.3d at 221.

In determining whether the standard for actual malice in a defamation action has been satisfied, "the reviewing court must consider the factual record in full."  *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).  "[T]he boundaries of actual malice, and particularly reckless disregard, cannot be fixed by the defining words alone but must be determined by the applications of those words to particular circumstances."  *Id.* at 592. In other words, "a plaintiff [in a defamation case] is entitled to prove the defendant's state of mind through circumstantial evidence."  *Id.* at 591; *Alaniz v. Hoyt*, 105 S.W.3d 330, 347 (Tex. App.—Corpus Christi 2003, no pet.), *overruled on other grounds*, *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881-82 (Tex. 2009) ("Although actual malice focuses on the defendant's subjective state of mind, a plaintiff can prove it through objective evidence about the circumstances surrounding the alleged defamatory words.").  Here, the evidence showed that Olson went on the radio with a document that he knew was confidential, private, and contained allegations against Westergren that were subject to an on-going investigation.  The circumstances under which Olson came into possession of the document were suspect—a copy of Cox's charge was left behind after a board of regents meeting, retrieved by a janitor, and then disseminated around the college.  Olson knew of the earlier clearing of Westergren through the report of an outside law firm that investigated Cox's grievances.  He also knew that the allegations of sexual misconduct were only brought after the release of the

6

report clearing Westergren. Finally, although Olson contacted Cox in an attempt to verify the truth of the allegations and the charge of discrimination was notarized, he did not make any attempts to contact the other "senior female administrator" who was alleged to be present during Westergren's inappropriate behavior.

It is true that "the failure to investigate the facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth." *Bentley*, 94 S.W.3d at 591. But Olson's failure to investigate Cox's allegations does not stand alone in this case. The evidence established that Olson is a tenured history professor, long-time department chair, and member of academic organizations that promote the investigation of diverse ideas and perspectives. The testimony of Olson and others at trial also established that Olson is an advocate for student and employee rights and pursues those complaints fairly. This is all evidence that Olson's failure to investigate was contrary to his usual practice, which is an indication of reckless disregard. *See id.*

In addition to the foregoing, Olson's credibility was called into question at trial. For instance, although he professed to rely on the outside law firm's report to confirm Cox's "stellar" employment record for purposes of her credibility, he labeled the report a "whitewash" with regard to its clearing of Westergren. Moreover, his testimony at trial concerning his attempts to verify the allegations with Cox differed from his deposition testimony—at trial, Olson testified that Cox confirmed the allegations, but in his deposition, Olson testified that he made no such inquiries about the truth of the allegations. "Because the trier of fact has the ability to examine the witness's demeanor,

7

we must defer to its credibility determinations." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000). In this case, the jury was permitted to question Olson's credibility in light of the above.

We acknowledge that credibility issues, alone, do not constitute clear and convincing evidence of actual malice. *See Alaniz*, 105 S.W.3d at 347 (holding that "inconsistencies or doubts regarding the reliability or credibility of the defendant's source of information do not amount to clear and convincing evidence of the defendant's knowledge of the falsity of the words or that the defendant entertained serious doubts about their truth" (citing *Turner*, 38 S.W.3d at 125). But "[t]he defendant in a defamation action . . . cannot . . . automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Here, in particular, the jury could still infer actual malice if Olson omitted "critical facts that distort[ed] the character of [his] communication." *See Alaniz*, 105 S.W.3d at 347 (citations omitted). The evidence shows that Olson knew the following facts: the outside report on Olson's grievances exonerated Westergren of wrongdoing with regard to Cox's complaints; Cox only raised the allegations of sexual misconduct after that report was issued; and the charge of discrimination was a confidential document and part of an on-going investigation. The evidence at trial does not show that, in his statements on the radio, Olson mentioned any of these facts. Where there are "obvious reasons to doubt the veracity of the informant or the accuracy of [her] reports," the jury may find recklessness. *St. Amant*, 390 U.S. at 732. Such

8

reasons clearly existed in this case.

Thus, considering the factual record in full, we conclude that the circumstances leading up to Olson's on-air statements in combination with Olson's failure to investigate the allegations were sufficient evidence from which the jury could form a firm belief or conviction that Olson acted with reckless disregard as to the truth or falsity of Cox's allegations against Westergren. We conclude that the evidence was therefore clear and convincing and supported the jury's actual malice finding. Olson's second issue is overruled.

## B. Damages

By his third issue, Olson argues that the jury's damages awards were supported by factually insufficient evidence. Specifically, Olson argues that Westergren "failed to provide any evidence as to how the reputation of Judge Westergren was harmed or lessened as a result of the conduct of Bruce Olson" and did not produce factually sufficient evidence supporting the jury's finding that Westergren sustained reputational damages "in the amount of twenty thousand ($20,000.00)."

In reviewing an appellant's factual sufficiency challenge to an adverse jury finding on which the other party had the burden of proof, as is the case here, we will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will set aside the district court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

9

The jury was instructed as follows with regard to reputational damages and awarded the noted amounts:

> What sum of money, if paid now in cash, would fairly and reasonably compensate [Westergren] for his injuries, if any that were proximately caused by the statement or statement[s]?
>
> Consider the elements of damages listed below and none other.   Consider each element separately.   Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.   That is, do not compensate twice for the same loss, if any.   Do not include interest on any amount of damages you find.
>
> Answer separately in dollars and cents for damages, if any.
>
> a.      Injury to reputation sustained in the past.
>
>         Answer:   $10,000
>
> b.      Injury to reputation that, in reasonable probability, [Westergren] will sustain in the future.
>
>         Answer:   $10,000
>
> c.      Mental anguish sustained in the past.
>
>         Answer:   [$]0
>
> d.      Mental anguish that, in reasonable probability, [Westergren] will sustain in the future.
>
>         Answer:   [$]0

Again, we are bound by the law as laid out in the charge as Olson lodged no objection to it.   *See Romero*, 166 S.W.3d at 221.

There was substantial evidence presented at trial regarding Westergren's positive and distinguished reputation in the community.   Westergren testified that he is very active in the community and that he was instrumental in starting several children's charity

10

organizations. David Bright, a local attorney, testified that Westergren is a community-oriented person and is "very highly thought of." Guy Watts, a member of the Del Mar Board of Regents at the time of the events giving rise to this case, testified that Westergren had "a long distinguished career." Olson even testified that until the summer of 2006, he believed Westergren to be a "nice man." Hector Morales, a long-time Del Mar employee, testified that he has known Westergren for a long time, "couldn't believe" the allegations made by Cox, and that he "was saddened by it."

"Our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation . . . ." *Bentley*, 94 S.W.3d at 604. In other words, if the statement is defamatory per se, no independent proof of damage to the plaintiff's reputation is required, as the defamation itself gives rise to a presumption of this injury. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.); *see Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 921 (Tex. App.—Corpus Christi 1991, writ dism'd) ("Statements may be slanderous per se if they are so obviously harmful to the person aggrieved that no proof of their injurious effect is necessary to make them actionable."). A statement is defamatory per se if it: "(1) impute[s] the commission of a crime; (2) impute[s] contraction of a loathsome disease; (3) cause[s] injury to a person's office, business, profession, or calling; or (4) impute[s] sexual misconduct." *Moore*, 166 S.W.3d at 384.

Olson's statements on the radio regarding Westergren's actions toward Cox clearly imputed sexual misconduct and, as such, were defamation per se. The injury to

11

Westergren's reputation was therefore presumed. *See Bentley*, 94 S.W.3d at 604; *Moore*, 166 S.W.3d at 384. Moreover, from the evidence we have summarized above, the jury could have found that Westergren's reputation was, in fact, injured.

We further conclude that the amount of the jury's award, a total of $20,000, was supported by the evidence. "The amount of general damages [such as reputation damages] is very difficult to determine, and the jury is given wide discretion in its estimation of them." *Peshak v. Greer*, 13 S.W.3d 421, 427 (Tex. App.—Corpus Christi 2000, no pet.). Such damages are often "incapable of money valuation," and we defer to the fact finder in its determination of those damages. *Shearson Lehman Hutton, Inc.*, 806 S.W.2d at 922. In light of the evidence presented at trial, we defer to the jury's wide discretion and conclude that the damages award—an award which was, incidentally, well below the "six figure range" award suggested by Westergren in his closing argument—was not excessive.

In sum, the evidence supporting the jury's award of damages was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust and was therefore factually sufficient. *See Cain*, 709 S.W.2d at 176. Olson's third issue is overruled.

### III. RECKLESS DISREGARD DEFINITION

By his fourth issue, Olson asserts that "the jury should have been provided a legal definition of reckless disregard in the jury charge." However, in our review of the record, we have found no objection to the jury charge on this basis. To preserve error in the jury charge, the complaining party must have, by objection, "made the trial court aware of the

12

complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Because Olson failed to timely object to the jury charge, he has waived any error for our review. *See id.*; *see also* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 272 (providing that all objections shall be "presented in writing" or "dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury" and "[a]ll objections not so presented shall be considered as waived"), 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."). Olson's fourth issue is overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
18th day of August, 2011.

13